John R. ADCOX, et al., Plaintiffs,

v.

TELEDYNE, INC., et al., Defendants.

No. 5:91CV2521.

United States District Court, N.D. Ohio, E.D.

Dec. 23, 1992.

---

Katherine Hart Smith, Wagner, Smith, Patterson & Yates, Mark Hilkert, Scanlon & Gearinger, Akron, OH, for plaintiff.

Peter D. Post, Beth L. Silver, Reed, Smith, Shaw & McClay, Pittsburgh, PA, Sheila M. Markley, Day, Ketterer, Raley, Wright & Rybolt, Canton, OH, for Teledyne, Inc. and Teledyne Industries, Inc.

Peter D. Post, Beth L. Silver, Reed, Smith, Shaw & McClay, Pittsburgh, PA, Sheila M. Markley, Day, Ketterer, Raley, Wright & Rybolt, Canton, OH, Charles R. Armstrong, Sr., Carolyn T. Wonders, United Rubber, Cork, Linoleum & Plastic Workers Of America, Akron, OH, for United Rubber Cork, Linoleum and Plastic Workers and Local 99 United Rubbers Workers Union.

## ORDER

SAM H. BELL, District Judge.

Currently pending before the court are three motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. As the analysis relevant to the separate motions is the same, the court will discuss all of the motions herein. The first motion for summary judgment was filed by the United Rubber, Cork, Linoleum and Plastic Workers of America International Union (the "URW") and URW Local 99 (collectively "Union defendants") on June 17, 1992. (Docket # 37.) Teledyne, Inc., and Teledyne Industries, Inc., Teledyne Monarch Rubber Division (collectively "Teledyne defendants") followed suit on August 31, 1992. (Docket # 55). Finally, plaintiffs, former employees at Teledyne's Hartville, Ohio plant and members of Local 99, filed a motion for summary judgment against both the Union and Teledyne defendants on October 14, 1992. (Docket # 66.) All of the parties hereto have engaged in filing responses and replies to these motions. The parties have also filed hundreds of pages of exhibits and depositions to be considered in conjunction with the motions.

The underlying complaint in this case was filed on December 13, 1991. The complaint sets forth four separate counts. In the first count, plaintiffs bring a hybrid Labor Management Relations Act § 301, 29 U.S.C. § 185, claim against the Union and Teledyne defendants. The remaining three counts allege violations of provisions of the Employee Retirement Income Security Act (ERISA) and are brought pursuant to ERISA section 502 which provides for civil actions to enforce the act. 29 U.S.C. § 1132.

## BACKGROUND

Plaintiffs in this matter lost their jobs when Teledyne shut down its Hartville, Ohio plant on June 16, 1991. Prior to the

closing, plaintiffs worked under a collective bargaining agreement between Local 99 and Teledyne which took effect in 1988 and terminated June 16, 1991—simultaneous with the official closing of the plant. The 1988 collective bargaining agreement contained a Pension, Insurance and Service Award Agreement. This agreement included provisions for employer contributions to retiree health insurance and for payment of a service award to certain employees who lost their job and were not yet eligible for a pension. The service award functioned in many respects like severance pay.

Beginning in January, 1991, Teledyne and the Union engaged in effects bargaining to resolve the impact of the proposed closing on the employees. During effects bargaining, the Union initially argued that all retirees were entitled to life-long health insurance. The Union also claimed that all employees who were otherwise eligible for the service award and were not eligible for *immediate* pension benefits were entitled to a service award. Teledyne disagreed. Teledyne countered that retiree health insurance was tied to the collective bargaining agreement and that when the agreement lapsed, so to did the obligation to fund retiree health care. Teledyne also claimed that employees with vested deferred pension benefits were nonetheless eligible for a pension and therefore not entitled to a service award.

The union faced the near certainty of lengthy litigation and the apparent possibility of losing not only the service award, but also retiree health insurance. Under the circumstances, the Union negotiated a compromise. The service award was dropped from the Plant Closing Agreement. Teledyne agreed therein to permit lump sum distributions of pension benefits as a way to give employees access to immediate cash. Teledyne also agreed to life-time retiree health insurance subject to a cap on the premium paid by Teledyne and to provide short-term health coverage to terminated employees with a cash buy-out option. The plant closing agreement also included a broad release provision terminating all Teledyne liability under prior agreements, including the Service Award agreement.

The Union membership rejected the plant closing agreement on June 14, 1991. On June 28, the membership voted not to re-vote on the proposed agreement. In July, the Union issued Honorary Withdrawal and Transfer Cards to the members, apparently terminating their rights and privileges as members. Even so, the Union continued to pursue ratification of the proposed agreement. After a post card poll to determine interest in a re-vote, the Union scheduled a vote on August 22. The plant closing agreement was ratified at that meeting.

Thereafter, certain plaintiffs protested this result to the Local and to the International but were not satisfied. Plaintiff Adcox filed a complaint with the National Labor Relations Board which was apparently withdrawn before the Board took formal action. This litigation followed.

## STANDARD OF REVIEW

In reviewing a motion for summary judgment, a court must consider the pleadings, related documents, evidence, and all reasonable inferences in a manner most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Smith v. Hudson*, 600 F.2d 60 (6th Cir.1979). Rule 56 provides, in relevant part, as follows:

(c) ...

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

.    .    .    .    .

(e) ...

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set

forth specific facts showing that there is a genuine issue for trial.

Three Supreme Court cases have provided guidance as to the nature of the respective burdens allocated under Rule 56. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2502, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The ultimate burden lies with the non-moving party to show the existence of a genuine issue of material fact. "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts ... In the language of the Rule, the non-moving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*' Fed.Rule Civ.Proc. 56(e)." *Matsushita*, 475 U.S. at 586–587, 106 S.Ct. at 1356 (emphasis supplied). "In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. The court in *Anderson* held that "the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment. This is true even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff had had a full opportunity to conduct discovery." *Anderson*, 477 U.S. at 257, 106 S.Ct. at 2514.

On the other hand, the moving party's burden under Rule 56 is lighter.

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. But unlike the Court of Appeals, we find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim. On the contrary, Rule 56(c) ... suggests the absence of such a requirement.

*Celotex, supra*, 477 U.S. at 323, 106 S.Ct. at 2553 (emphasis supplied).

The Sixth Circuit Court of Appeals, in *Street v. J.C. Bradford and Co.*, 886 F.2d 1472 (6th Cir.1989) recently reviewed court decisions and commentary regarding the impact of *Anderson, Celotex*, and *Matsushita* on summary judgment practice. The court concluded that a "new era" in summary judgment practice has opened in the court system as a result of these opinions.

> Scholars and courts are in agreement that a "new era" in summary judgments dawned by virtue of the Court's opinions in these cases ... On the whole, these decisions reflect a salutary return to the original purpose of summary judgments. Over the years, decisions requiring denial of summary judgment if there was even a suggestion of an issue of fact and tended to emasculate summary judgment as an effective procedural device.

*Street, supra*, at 1476.

The court enunciated the following "new era" principles, among others: as on federal directed verdict motions, the "scintilla" rule applies, *i.e.*, the respondent must adduce more than a scintilla of evidence to overcome the motion; the respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment"; the trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact. *Id.* at 1479–1480 (footnotes and citations omitted).

This discussion largely assumes that motions for summary judgment will be filed by defendants, not plaintiffs. In the in-

stant case, one of the motions has in fact been filed by plaintiff, therefore, the court and the parties must be mindful of the fact that plaintiffs bear the burden of proving their case by a preponderance of evidence at trial. That burden will necessarily affect their burden for summary judgment purposes as well.

> In assessing the sufficiency of the evidence to sustain a particular inference, therefore, the court must also consider the burden of proof on the issue and where it will rest at trial. When the moving party does not have the burden of proof on the issue, he need show only that the opponent cannot sustain his burden at trial. *But where the moving party had the burden*—the plaintiff on a claim for relief or the defendant on an affirmative defense—*his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.*

William W Schwartzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487–88 (1984) (emphasis supplied; citations omitted) (quoted in *Calderone v. United States*, 799 F.2d 254, 258–59 (6th Cir.1986).

## LAW AND ANALYSIS

### I. COUNT I.

#### A. *District Court Jurisdiction Over Hybrid 301 Claims.*

■ Federal courts are courts of limited jurisdiction. The authority of lower federal courts is circumscribed by the necessity of having both constitutional and congressional authorization to hear the case. *Insurance Corp. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701, 102 S.Ct. 2099, 3103, 72 L.Ed.2d 492 (1982). This concern is so fundamental to the authority and operation of the federal judiciary that this court is compelled to notice the want of jurisdiction regardless of whether the issue is raised by the parties. *Liberty Mutual Ins. Co. v. Wetzel*, 424 U.S. 737, 740, 96 S.Ct. 1202, 1204–05, 47 L.Ed.2d 435 (1976). In the instant case, the parties seem to assume the jurisdiction of this court. However, count one raises critical jurisdictional issues which must be resolved before it would be appropriate to resolve the merit-based arguments advanced in the parties' briefs.

According to Count I, "Teledyne failed to pay the Special Distribution as contained in the Pension Insurance and Service Award Agreement thereby violating the CBA and made material misrepresentations upon which Plaintiff's detrimentally relied, which is actionable under Section 301 of the LMRA, 29 U.S.C. Section 185." Complaint ¶ 30. Count one further alleged that, "the URW's and Local 99 actions as stated herein were a violation of its duty of fair representation under Section 9(a) of the LMRA, 29 U.S.C. Section 159(a), and is therefore actionable under Section 301 of the LMRA, 29 U.S.C. Section 185, and/or 28 U.S.C. Section 1337(c)." Complaint ¶ 31.

Section 301 of the Labor Management Relations Act, cited in plaintiff's complaint, provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). This provision is invoked to authorize district court jurisdiction over claims for breach of collective bargaining agreements.

■ The Union's duty of fair representation does not arise from or pursuant to a collective bargaining agreement. Rather, the Union's duty is derived from its statutory status as the exclusive bargaining agent for the unit. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 564, 96 S.Ct. 1048, 1056, 47 L.Ed.2d 231 (1976). The duty of fair representation extends to all union activities, including contract negotiations. *Air Line Pilots Ass'n v. O'Neil*, —— U.S. ——, ——, 111 S.Ct. 1127, 1130, 113 L.Ed.2d 51, 58 (1991). A breach of that

duty may but does not necessarily breach a collective bargaining agreement. In a suit for breach of duty where the Union is not alleged to have breached the contract, section 301 does not provide jurisdiction. *Smith v. Local N. 25, Sheet Metal Workers Int'l Ass'n*, 500 F.2d 741, 746 (5th Cir. 1974). Instead, jurisdiction exists pursuant to 28 U.S.C. § 1337. *Id.* at 748; *Storey v. Local 327, Intern' Broth. of Teamsters*, 759 F.2d 517, 523. (6th Cir.1985).

■ Section 1337 provides: "The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies." 28 U.S.C. § 1337. While seemingly conferring broad jurisdiction, section 1337 adds nothing to an Act which has its own provision conferring jurisdiction. *IIT v. Vencap, Ltd.*, 519 F.2d 1001, 1015 (2d Cir.1975). Therefore, while section 1337 may be invoked in a suit for breach of the duty of fair representation, it can not be used to expand the jurisdictional limits imposed by section 301 on suits for breach of the collective bargaining agreement.

■ Out of concern that by breaching its duty, a union might sanction an employer's breach of contract, the Supreme Court allows a hybrid section 301 claim. In such a claim, plaintiff must show that the Union breached its duty and that that breach led to the employer's breach of contract. *White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 559 (6th Cir.1990). For example, while a court must generally defer to arbitrator's judgments, *Steelworkers v. Enterprise Corp.*, 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960), an employee may sidestep the grievance process and directly sue his employer in federal court if, "the union refuses to press or only perfunctorily presses the individual's claim." *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965). "The union's breach of duty relieves the employee of an express or implied requirement that disputes be settled through contractual grievance procedures; if it seriously undermines the integ-

rity of the arbitral process the union's breach also removes the bar of the finality provision of the contract." *Hines*, 424 U.S. at 567, 96 S.Ct. at 1058.

■ Rules regarding hybrid 301 cases are well established:

[T]he two constituent claims in every hybrid 301 action—breach of collective bargaining agreement and breach of a union's duty of fair representation—are interdependent; if the first claim anchored in the employer's alleged breach of the collective bargaining agreement fails, then the breach of duty of fair representation claim against the union must necessarily fail with it.

*White*, 899 F.2d at 559. A hybrid 301 claim is only intended to permit employees to overcome the preclusive effect of the wrongful behavior of their exclusive bargaining agent. The hybrid 301 claim is not intended to expand the jurisdiction of the courts. Just as the substantive rules for a hybrid 301 claim are interpreted conjunctively, so too should the jurisdictional rules. Otherwise, section 1337's broad grant of authority may be abused to permit a court to hear a claim jurisdictionally prohibited by section 301. Such a result violates Judge Friendly's admonition in *Vencap*. Therefore, the fact that there is jurisdiction for the breach of duty claim against the union will not be a sufficient jurisdictional basis for the hybrid claim if there is also not separate authority under section 301 for the breach of contract claim.

B. *Plaintiffs' Breach of Contract Claim is Not Cognizable Under Section 301.*

■ To find that Teledyne's failure to pay the Special Distributions contained in the 1988 agreement is a breach, as alleged by plaintiffs, the court must first find that the provisions of the 1988 agreement were still in force. The release in the Plant Closing Agreement signed by Teledyne and the Union undercuts such a finding:

[T]his Agreement is in full discharge and settlement of all Company obligations and Employee or Union claims under any agreement, including Service Award,

Early Retirement benefit or any employment-related local, state or federal law, including, without limitation, ERISA, the National Labor Relations Act, the Labor–Management Relations Act, Age Discrimination in Employment Act, and the Workers Adjustment and Retraining Notification Act, except for obligations arising under this Agreement or health-related claims such as workers' compensation claims.

Plant Closing Agreement at ¶ 10. So long as the Plant Closing Agreement is valid, plaintiffs can not prevail on their claim for benefits pursuant to the superseded collective bargaining agreement. In essence, plaintiffs' first claim asks this court to determine the validity of the respective agreements.

The instant situation is analogous to that addressed by the Sixth Circuit in *Heussner v. Nat'l Gypsum Co.*, 887 F.2d 672 (6th Cir.1989). In that case, employees were assured severance pay under a 1984 collective bargaining agreement scheduled to expire May 1, 1987. National Gypsum claimed that through the sale of assets to a third party, the severance pay requirement could be avoided. Rather than entirely lose the benefit, the United Steel Workers negotiated a new agreement which went into effect before the old agreement expired. The case was filed by disgruntled employees terminated by National Gypsum's successor and given severance pay pursuant to the 1987, not the 1984, agreement. *Id.* at 674. The first claim in that case was similar to plaintiffs breach of contract claim in the instant case—a section 301 claim against the employer seeking rescission of the new agreement to permit recovery of the benefits promised in the old agreement. *Id.* at 675–76.

The Circuit upheld the dismissal of the claim based on a narrow interpretation of section 301. "[W]e are reluctant in this case to expand our interpretation of Section 301(a) to give district courts jurisdiction over questions of the *validity* of collective bargaining contracts." *Id.* at 676 (emphasis supplied). In that case, as in this case, the claims under a predecessor agreement could not be pursued until the successor

agreement was invalidated. Since section 301 does not authorize such an exercise by this court, the first component of plaintiffs' hybrid 301 claim fails, so the entire hybrid 301 claim must be dismissed.

## II. COUNT II.

■ Plaintiffs seek to achieve through pension law what they are denied under labor law—district court review of the validity of the collectively bargained agreements. Plaintiffs second count is a claim for collection of benefits filed pursuant to 28 U.S.C. § 1132(a)(1)(B). This claim is also premised on the provisions of the superseded collective bargaining agreement. However, section 1132 only authorizes claims in federal court while the collective bargaining agreement is in force. *Id.* at 677. Like the district court in *Heussner,* this court lacks jurisdiction over the ERISA claim premised on the invalidity of the superseding collectively bargained contract.

## III. COUNT III.

■ Count three alleges that Teledyne breached its fiduciary duty because it "made material misrepresentations to Plaintiffs, upon which Plaintiffs relied to their detriment; failed to act in accordance with plan documents; acted in a manner adverse to the Plaintiffs' interests as beneficiaries; and terminated Plaintiffs interests in its benefit plan." Complaint at ¶ 38.

Fiduciary duties are codified at 29 U.S.C. § 1104. As recently noted by our Circuit, "breach of these duties constitutes a violation of 29 U.S.C. § 1109 ..." *Flacche v. Sun Life Assur. Co. of Canada (U.S.)*, 958 F.2d 730, 733 (6th Cir.1992). It is the violation of section 1109 which supports any claim under 29 U.S.C. § 1132(a)(2). Section 1132, cited by plaintiffs, permits civil actions to be brought by a beneficiary *"for appropriate relief under section 1109 of this title."* 29 U.S.C. § 1332(a)(2) (emphasis added). 29 U.S.C. § 1109 provides, in pertinent part:

Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties im-

posed on fiduciaries by this subchapter shall be personally liable *to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary,* and shall be subject to such other equitable and remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for violation of section 1111 of this title.

29 U.S.C. § 1109(a) (emphasis added).

In the instant case, it is clear from both the pleadings and briefs that plaintiffs seek recovery on their own behalf, not on behalf of the plan. *See e.g.,* Complaint, *supra;* Plaintiffs' Motion for Summary Judgment at 24 (*"Plaintiffs' Are Entitled to Severance Under the Pension, Insurance and Service Award Agreement."*) (emphasis supplied). Such a cause of action is unavailable, however, because § 1109 only permits recovery to inure to the ERISA plan, not to individual beneficiaries. The Sixth Circuit has recently commented that:

> [S]uits under ERISA for breach of fiduciary duty arise under 29 U.S.C. § 1132(a)(2), which allows beneficiaries of a plan, like [plaintiff], to seek relief under 29 U.S.C. § 1109.

> . . . . .

> As the language regarding fiduciary duty suits in section 1109 makes clear, ERISA contemplates that breaches of fiduciary duties injure the plan, not individual beneficiaries, and any recovery thus goes to the plan. As the Supreme Court noted in *Massachusetts Mutual Life Insurance Co. v. Russell,* 473 U.S. 134 [105 S.Ct. 3085, 87 L.Ed.2d 96] (1985):

> > A fair contextual reading of the statute makes it abundantly clear that [the] draftsman [of § 1109] were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary.

*Id.* at 142 [105 S.Ct. at 3090]. We recently decided a case by expressly following *Russell* and declaring that "1109 authorizes relief only to the plan itself, not to individual beneficiaries." *Farrell v. Automobile Club of Michigan,* 870 F.2d 1129, 1133 (6th Cir.1989). *See also Mehl v. Navistar Int'l Corp.,* 670 F.Supp. 239 (N.D.Ill.1987).

*Bryant v. Int'l Fruit Product Company, Inc.,* 886 F.2d 132, 135 (6th Cir.1989). A claim for breach of fiduciary duty is distinct from a claim for payment of benefits. The two claims are not interchangeable.

In *Bryant,* the court upheld the denial of a claim for breach of fiduciary duty because the plaintiff participants only sought recovery on their own behalf, and did not seek a return of funds to the plan in question. *Id.* The complaint therefore failed to state a cause of action for breach of fiduciary duty under ERISA. *Id.* An identical conclusion, must, of course, be reached in this case. Accordingly, count three is hereby dismissed.

## IV. COUNT IV.

▇▇▇▇ Last, plaintiffs bring their prayer pursuant to 29 U.S.C. § 1140. That statute provides in part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.

29 U.S.C. § 1140. Plaintiffs claim that Teledyne's conduct coerced the ratification of the Plant Closing Agreement thereby interfering with their rights under the 1988 agreement. This claim misapprehends the meaning of section 1140. The legislative history, as previously interpreted by this Circuit, "reveals that the prohibitions were aimed primarily at preventing unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights."

*West v. Butler,* 621 F.2d 240, 245 (6th Cir.1980). As Congress explained:

> [Sections 510 and 511] were added by the Committee in the face of evidence that in some plans a worker's pension rights or the expectations of those rights were interfered with by the use of economic sanctions or violent reprisals. Although the instances of these occurrences are relatively small in number, the Committee has concluded that safeguards are required to preclude this type of abuse from being carried out and in order to completely secure the rights and expectations brought into being by this landmark reform legislation.

S.Rep. No. 93–127, 93d Cong., 2d Sess., *reprinted at* 1974 U.S.Code Cong. & Admin.News pp. 4838, 4872 (*quoted in West,* 621 F.2d at 245). The nature of the abuses and safeguards intended by Congress are further clarified by the legislative history.

> Most collective bargaining agreements protect employees against discharge without good cause and provide effective enforcement machinery in arbitration proceedings whose results are enforceable under section 301 of the Labor–Management Relations Act. But roughly half of all pension participants are not unionized and so they lack protection. Especially vulnerable are managers and executives whose substantial pension potentialities provide an incentive to their discharge before vesting. The managers of the bill ought to think twice too. Discipline and discrimination can be so unpleasant as to amount to constructive discharge, a term used by the National Labor Relations Board. That can be the type of harassment which does not say that one is fired, but makes living such a hell that a person wishes he did not have to hang on to endure.
>
> In recognition of that problem, section 610 of S.4 as originally reported—made it illegal to "discharge, fine, suspend, expell [sic], discipline or discriminate" against plan participants to defeat rights under the act or a plan. The language parallels section 8(a)(3) of the National Labor Relations Act and should do the trick—but only if an adequate enforcement machinery exists.

119 Cong.Rec. 30374, *reprinted in* Legislative History at 1774–75 (Senator Hartke speaking) (*quoted in West,* 621 F.2d at 245). Section 8(a)(3) of the National Labor Relations Act to which Senator Hartke made reference makes it an unfair labor practice to discriminate "in regard to hire or tenure of employment or any term or condition of employment" to encourage or discourage union membership. 29 U.S.C. § 158(a)(3). Whatever form the employer's conduct takes, to violate section 1140, the conduct "must affect the individual's employment relationship in some substantial way." *Id.* at 245–46.

In the instant case, Teledyne's conduct could have no impact on the employment relationship because it was a foregone conclusion, undisputed by the parties, that plaintiffs were to be terminated whether or not the plant closing agreement was ratified. In fact, the plant was closed and plaintiffs terminated prior to the actual ratification of the plant closing agreement. Moreover, the conduct of which Teledyne is accused—coercing a plant closing agreement waiving previously promised welfare benefits—only affects the terms of the pension plan, not the employment relationship as contemplated by Congress.

Plaintiffs' fourth count is also legally insufficient and must be dismissed.

## CONCLUSION

National labor policy, as expressed by Labor–Management Relations Act section 301 does not extend to this court the authority to determine the validity of the Plant Closing Agreement. So long as this court is unable to question the validity of the superseding agreement, it is impossible for this court to consider Teledyne's liability under the predecessor agreement. This limitation has like effect in the context of a claim for benefits pursuant to ERISA. So long as the claim is based on an agreement which this court can not find was in force, the claim must be dismissed.

Plaintiffs' claims are, fundamentally, requests for benefits. No matter how plain-

tiffs attempt to couch these demands, they will not be able to escape the jurisdictional defects. The breach of fiduciary duty and interference with ERISA rights claims are inappropriate ways to seek a remedy otherwise denied.

Plaintiffs' motion for summary judgment is DENIED. The motions for summary judgment filed by Teledyne and the Union defendants are GRANTED.

IT IS SO ORDERED.