30 F.3d 134
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Andrew J. MARCIELLA, et al., Plaintiffs-Appellants,
v.
The PRUDENTIAL INSURANCE COMPANY OF AMERICA, et al.,
Defendants-Appellees.
 No. 93-3559.
 United States Court of Appeals, Sixth Circuit.
 July 18, 1994.
 
 Before: GUY and NELSON, Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is an appeal from a summary judgment for the defendant insurance company in a purported class action brought by participants (and dependents or designated beneficiaries thereof) in a single-employer welfare benefit plan. The insurance company had contracted with the plan sponsor, the company by which the participants were employed, to pay group life and health insurance benefits in accordance with the contract of insurance. The employer--which ultimately went into bankruptcy--stopped paying insurance premiums when it became financially embarrassed. Several months thereafter it stopped making payments to a self-insurance fund from which some of the benefits were supposed to come, and it failed to remit premiums paid by employees who, when they lost their jobs, elected to purchase their own health care continuation coverage pursuant to the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. Secs. 1161 et seq. The employer also failed to give retired employees proper notice of their right to elect continuation coverage under COBRA. Although the employer gave notice of conversion rights under the life insurance coverage, finally, it failed to advise of the time limits within which such rights were to be exercised.
 
 
 2
 The plaintiffs contend that the insurance company was a co-fiduciary under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Secs. 1001 et seq. As such, the plaintiffs say, the insurance company had a fiduciary duty to make sure that the obligations of the employer and the trustees of the plan were fulfilled. The insurance company having violated its own fiduciary obligation in this respect, the plaintiffs assert, it should have made the plan whole and should have honored benefit claims that it would not otherwise have been obligated to pay.
 
 
 3
 The plaintiffs claim standing to enforce the asserted fiduciary obligation under Sec. 502(a)(2) of ERISA, 29 U.S.C. Sec. 1132(a)(2), which authorizes participants and beneficiaries, among others, to bring an action for appropriate relief under Sec. 409 of the Act, 29 U.S.C. Sec. 1109. Section 409 provides that a fiduciary whose breach of duty results in loss to the plan shall be liable to make good the loss.
 
 
 4
 The district court concluded as a matter of law that there had been no breach of duty on the part of the defendant insurance company with regard to the giving of notice about continuation and conversion rights. The court further concluded that any claim for breach of fiduciary duty under ERISA could only be brought on behalf of the plan, as opposed to individual participants and beneficiaries. The relief sought by the latter would not benefit the former, the court decided, and judgment was therefore rendered in favor of the insurer. In addition, the court dismissed for want of prosecution claims asserted by the plaintiffs against "unknown" trustees of the plan.[1] The court's disposition of the case made it unnecessary to decide the class certification issue.
 
 
 5
 We find no abuse of discretion in the dismissal (which was without prejudice) of any claims against the plan and the unknown trustees. Upon de novo review, moreover, we conclude that the insurance company was entitled to summary judgment. We shall therefore affirm the judgment of the district court in its entirety.
 
 
 6
 * The plan sponsor, an office furniture manufacturer known as GF Corporation (formerly The General Fireproofing Co.), established the Group Health and Life Insurance Plan for Hourly and Retired Employees of GF Corporation pursuant to a collective bargaining agreement with Local 1617 of the United Steelworkers of America. The plan, of which GF was the administrator as well as the sponsor, covered unionized employees and retirees at a GF facility located in Youngstown, Ohio. The Prudential Life Insurance Company of America, the principal defendant herein, wrote group insurance (term life, accidental death and dismemberment, hospital expense, surgical expense, hospital medical expense, and major medical expense) for those covered by the plan.
 
 
 7
 Prudential and GF had a "minimum premium" arrangement for the group health coverage. Under this arrangement GF was to make monthly deposits into an account, called the PruMarc Account, on which Prudential would draw in order to pay current health insurance claims up to an agreed maximum. Although Prudential handled the paperwork, GF was a self-insurer with respect to such health care claims. Prudential undertook to use its own funds for payment of health care claims in excess of the agreed maximum, and GF was not a self-insurer with respect to the remaining coverage specified in the plan. Coverage not funded through the PruMarc Account was known as "Column I" coverage. Premiums for Column I coverage were payable on a monthly basis.
 
 
 8
 GF paid no Column I premiums after December 31, 1989. For the first three months of 1990, however, GF continued to make deposits into the PruMarc Account.
 
 
 9
 On February 15, 1990--two weeks after the Column I premium for January had become past due--GF closed the Youngstown plant and laid off all its hourly-paid employees. GF gave COBRA notices to the active employees at this point, advising them of their right to purchase continuing medical coverage, but never sent such notices to the retired employees. GF did negotiate a retiree health plan with the union, however, and letters were sent to the retirees urging them to take advantage of it. (Most did not do so.)
 
 
 10
 On April 18, 1990, GF filed for protection under Chapter 11 of the Bankruptcy Code. In a letter dated May 8, 1990, GF advised Prudential that all insurance coverage was terminated at the time of filing. Prudential took this to mean that GF had canceled its group insurance policy effective at midnight on April 17, 1990.
 
 
 11
 Prudential promptly sent GF a letter acknowledging cancellation as of April 17 and noting that covered employees had certain rights to convert their insurance coverage to individual policies. The letter told GF that it should send conversion notices to the affected individuals. GF did so by letter dated May 11, 1990; the letters were technically deficient, however, in that they failed to inform participants of the time limits for conversion.
 
 
 12
 Before describing the lawsuit that followed these events, we shall pause to give a somewhat more detailed account of the vicissitudes of the insurance coverage during the first part of 1990.
 
 
 13
 A. Health Insurance.
 
 
 14
 Under COBRA, the sponsor of a group health plan must provide that upon the occurrence of a "qualifying event" which would otherwise cause a beneficiary of the plan to lose coverage thereunder, the beneficiary may elect continuation coverage at his own expense. 29 U.S.C. Sec. 1161(a). Termination of a covered employee's employment is one such qualifying event. See 29 U.S.C. Sec. 1163(2). GF, apparently treating the plant closure and layoff of employees as a termination of employment, sent "COBRA notices" to all active hourly-paid employees in mid-February of 1990.
 
 
 15
 In response to these notices, several employees advised GF that they were electing to continue their health coverage. GF collected the required premiums for the continuation coverage, but there has been no showing that Prudential was aware of this fact--and it does not appear that GF forwarded any of the premiums to Prudential.
 
 
 16
 GF continued to fund the PruMarc account for a time, and Prudential continued to pay health insurance claims from the account. GF deposited no additional funds in the PruMarc account in April, however, and the account was soon exhausted. With no money in the PruMarc account, and with no Column I premium payments having been made since the end of the preceding year, Prudential put all claims for benefits "on hold."
 
 
 17
 The filing of GF's bankruptcy petition on April 18, 1990, was a "qualifying event" that triggered an obligation on the part of GF, as plan administrator, to notify its retired employees of their COBRA rights. See 29 U.S.C. Secs. 1163(6) and 1166(a)(4)(A). GF failed to discharge this statutory duty, and we gather that none of the retirees attempted to exercise the election prescribed by COBRA.
 
 
 18
 On June 1, 1990, the bankruptcy court ordered a sale of GF's assets. Soon thereafter the court entered an order requiring GF to pay post-bankruptcy retiree health claims out of the proceeds of the sale. Prudential used its own funds to pay retiree claims that had arisen prior to the filing of the petition in bankruptcy, and active employees' pre-bankruptcy claims that had been placed on hold were likewise paid by Prudential out of its own funds.
 
 
 19
 B. Life Insurance.
 
 
 20
 GF's cancellation of the policy meant that covered employees, both active and retired, had 31 days within which they could convert their life insurance to individual policies without proof of insurability. In a letter sent to GF on May 8, 1990, Prudential stated that it would "waive this [31 day] requirement, but you need to inform your active and retired employees that their conversion option(s) must be elected no later than June 15, 1990." (Emphasis in original.) The conversion notices sent out by GF failed to mention the June 15 cutoff date, but Prudential subsequently decided to waive the deadline for anyone who applied late for conversion.
 
 II
 
 21
 The instant lawsuit was filed in the United States District Court for the Northern District of Ohio on July 8, 1991. The named plaintiffs were five individuals, two of whom were identified as former employees of GF, two as dependents of former employees, and one as the widow and named beneficiary of a man who presumably had been a GF employee.
 
 
 22
 The plaintiffs' complaint asserted three causes of action against Prudential:
 
 
 23
 --Count One alleged that Prudential--which was said to have had discretionary authority with respect to the management and administration of the Employee Welfare and Benefit Plan, making Prudential a fiduciary pursuant to 29 U.S.C. Sec. 1002(21)(A)--committed breaches of its fiduciary duties by failing to hold an asset of the plan (presumably the insurance policy) solely in the interest of the plan participants and other beneficiaries; failing to discharge its duties with due diligence and in accordance with the plan documents; concealing and facilitating breaches of fiduciary duty by GF or the unknown trustees and failing to remedy such breaches; and impermissibly causing plan assets to "inure to Defendant Prudential's benefit."
 
 
 24
 --Count Two alleged the breach by Prudential of a duty to notify GF's retired employees of their right to elect health care continuation coverage under COBRA. As amplified by the plaintiffs' brief on appeal, this count also alleged that employees who elected to continue coverage and who made premium payments to GF were entitled to up to 18 months of COBRA coverage that Prudential wrongfully failed to provide. (Under 29 U.S.C. Sec. 1162(2)(A)(i), the maximum required period of continuation coverage in the case of a termination of employment is 18 months.)
 
 
 25
 --Count Three alleged that Prudential willfully failed to cause the plaintiffs to receive proper notice of their conversion rights under the group insurance policy.
 
 
 26
 The unknown trustees of the plan were charged with deliberate failure to take appropriate action with respect to the matters covered by Counts Two and Three, but not Count One.
 
 
 27
 A return of service was filed with respect to the plan and its unknown trustees, but no appearance was ever entered on their behalf.[2] Prudential promptly entered an appearance and filed an answer denying any wrongdoing on its part and asserting numerous affirmative defenses.
 
 
 28
 In June of 1992, following discovery, the plaintiffs filed motions seeking class certification and a partial summary judgment on the issue of whether Prudential was a fiduciary of the group health plan. Prudential filed its own summary judgment motion the following month, and flurries of briefs were filed on both sides.
 
 
 29
 On January 28, 1993--ten days before the scheduled trial date--the district court entered a memorandum opinion and order granting Prudential's motion for summary judgment, overruling the plaintiffs' motion for partial summary judgment, and, without prejudice, dismissing for lack of prosecution the plaintiffs' claims against the plan and the unknown trustees. The plaintiffs filed a motion for reconsideration; the motion was denied after further briefing, as was a motion for leave to amend the complaint. This appeal followed.
 
 III
 
 30
 A. Count One--Breach of Fiduciary Duty.
 
 
 31
 The district court did not decide to what extent, if at all, Prudential may have been a fiduciary with respect to the plan. We see no reason to decide that issue either, although we note in passing that ERISA's requirement that the assets of an employee benefit plan be held "in trust" does not apply "to any assets of a plan which consist of insurance contracts or policies issued by an insurance company...." 29 U.S.C. Secs. 1103(a) and (b). Cf. Musto v. American General Corp., 861 F.2d 897, 911 (6th Cir.1988), cert. denied, 490 U.S. 1020 (1989). See also Flacche v. Sun Life Assurance Co. of Canada, 958 F.2d 730, 734 (6th Cir.1992) (the mere payment of pension benefit claims by the insurer of an ERISA plan does not make the insurer a fiduciary with respect to the plan).
 
 
 32
 The scope of liability for breach of any fiduciary duty under ERISA--liability enforceable, as noted at the outset of this opinion, by (among others) participants and beneficiaries, see 29 U.S.C. Sec. 1132(a)(2)--is defined in Sec. 409(a) of the Act, 29 U.S.C. Sec. 1109(a). That section provides, in pertinent part, as follows:
 
 
 33
 "Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary." (Emphasis supplied.)
 
 
 34
 Noting the repeated references in this provision to the relationship between the fiduciary and the plan, and marshalling a considerable body of legislative history along the same vein, the Supreme Court has said that "[a] fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 142 (1985). The Court was persuaded that "Congress did not intend [29 U.S.C. Sec. 1109] to authorize any relief except for the plan itself," id. at 144, and went on to hold that the statute neither expressly nor impliedly authorizes a plan beneficiary to recover extra-contractual damages for breach of fiduciary duty. Following Massachusetts Mutual, our court has repeatedly recognized that Sec. 1109 provides relief only for a plan and not for individual participants. See Adcox v. Teledyne, Inc., 21 F.3d 1381, 1390 (6th Cir.1994); Tregoning v. American Community Mutual Ins. Co., 12 F.3d 79, 83 (6th Cir.1993), cert. denied, 114 S.Ct. 1832 (1994); Richards v. General Motors Corp., 991 F.2d 1227, 1231 (6th Cir.1993); Bryant v. Int'l Fruit Product Co., 886 F.2d 132, 135 (6th Cir.1989); Farrell v. Automobile Club of Mich., 870 F.2d 1129, 1133 (6th Cir.1989). Under this line of cases, only the GF plan itself could recover for any breach of fiduciary duty, including any breach resulting from Prudential's alleged failure to rectify breaches of fiduciary duty attributed to co-fiduciaries.
 
 
 35
 The plaintiffs attempt to circumvent this not inconsiderable problem by pointing first to p 42 of the complaint ("As a direct and proximate cause [sic] of Defendant Prudential's actions in breach of their fiduciary duties, Plaintiffs and Defendant Plan suffered damages") and then to a portion of the prayer of the complaint asking "[t]hat Plaintiffs' employee benefit Plan be restored any profits which Prudential and the Unknown Trustees made through use of assets of the Plan." These passages make it clear, the plaintiffs say, that the plaintiffs are seeking damages on behalf of the plan, in addition to seeking individual recovery.[3]
 
 
 36
 It is one thing to assert a claim on behalf of the plan, however, and quite another to demonstrate that such a claim has some basis in fact. In the new era of summary judgment practice introduced by Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), a proper motion for summary judgment cannot be resisted solely by reference to the unsupported pleadings of the party opposing the motion. Nothing that has come to our attention in the record of this case suggests in any way that Prudential did in fact use plan assets to make profits that equity would regard as belonging to the plan, and nothing in the record suggests that the plan itself did in fact suffer damages as a direct and proximate result of any breach of fiduciary duty on the part of Prudential.
 
 
 37
 This case bears no meaningful resemblance to Gruber v. Hubbard Bert Karle Weber, Inc., 675 F.Supp. 281 (W.D.Pa.1987), where mismanagement of the assets of multi-employer health benefit plans was alleged to have resulted in the demise of the plans and the non-profit corporation that sponsored them. Plan participants and beneficiaries whose medical bills were left unpaid brought suit for damages against various officers and directors of the plan sponsor, and the defendants, citing Massachusetts Mutual, argued that a plaintiff could not recover personal damages from a plan fiduciary. The court rejected the argument for the following reasons:
 
 
 38
 "To deny plaintiffs relief on this basis would reward defendants for the thoroughness of their alleged mismanagement. If defendants wound the victim they may be sued, but kill it and the claim dies with it. Such a construction is absurd and unsupportable.
 
 
 39
 In the absence of a functioning plan, it is the class of beneficiaries and their rights under this plan which represent the interests of the plan for the purposes of Section 409. The plan's foremost interest as a non-profit trust is to satisfy the obligation to its beneficiaries. Because the present case presents not merely the claim of an individual to the exclusion of others, but the collective claims of the trust's beneficiaries, the relief sought would inure to the benefit of the plan as a whole, even though no plan technically exists." Id. at 284.
 
 
 40
 Unlike the defendants in Gruber, Prudential did not "kill" any plan and is not alleged to have done so. To the extent that medical bills or life insurance claims of any members of the purported plaintiff classes may have been left unpaid, it is because the employer, GF Corporation failed to make premium payments to Prudential and failed to fund the PruMarc account. ERISA does not require Prudential to provide insurance gratis, and it does not make Prudential a guarantor of the obligations assumed by GF when it negotiated its comprehensive benefit plan with the steelworkers union.
 
 
 41
 The plaintiffs repeatedly assert that whether or not they are entitled to recover damages under 29 U.S.C. Sec. 1132(a)(2) in respect of Prudential's alleged breach of fiduciary duties, 29 U.S.C. Sec. 1132(a)(3) entitles them to bring an action
 
 
 42
 "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."
 
 
 43
 Again, however, the right to bring an action does not necessarily mean that the action will be successful. The only "equitable" relief being sought here is "monetary damages," see p 6 of the prayer, and an order enjoining Prudential "from denying payment of Plaintiffs' claims," see p 2 of the prayer, which amounts to the same thing. Monetary damages are not a proper form of equitable relief under Sec. 1132(a)(3), see Mertens v. Hewett Associates, 113 S.Ct. 2063 (1993), and the plaintiffs' reliance on this section is misplaced. The district court did not err in entering summary judgment for Prudential on Count One of the complaint.
 
 
 44
 B. Count Two--Continuation Coverage Under COBRA
 
 
 45
 Insofar as Count Two rests on the proposition that Prudential was guilty of a breach of fiduciary duty in failing to notify the retirees of their COBRA rights after GF filed its petition in bankruptcy, Count Two fails for the reasons stated in the preceding section of this opinion.[4] Insofar as Count Two rests on the proposition that Prudential was obligated to provide up to 18 months of COBRA coverage for employees who exercised their COBRA rights and made premium payments to GF, the count fails for the reason that statutory responsibility for providing continuation coverage rests with "[t]he plan sponsor." 29 U.S.C. Sec. 1161(a). It was GF who was the plan sponsor, not Prudential. The plaintiffs have not demonstrated the existence of a material issue of fact as to whether Prudential received any of the premiums paid to GF for continuation coverage, and Prudential was under no contractual obligation to provide coverage for which it was not paid. Neither was it under any statutory obligation to do so.
 
 C. Count Three--Notice of Conversion Rights
 
 46
 We need not decide whether Prudential was under a duty to see that plan participants were notified of their right to convert their group insurance into individual policies, because it is undisputed that conversion notices were in fact sent out by GF. Although the notices failed to advise the recipients of the deadline for exercising their conversion rights, no one was damaged by this; Prudential stood willing to waive the deadline for anyone who applied late. Count Three of the complaint is thus totally devoid of merit.
 
 D. Claims for Benefits
 
 47
 Under Sec. 502(a)(1)(B) of ERISA, 29 U.S.C. Sec. 1132(a)(1)(B), a participant or beneficiary may bring a civil action "to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Paragraph 28 of the complaint alleges that some valid benefit claims "incurred" prior to termination of the policy have never been paid, and the plaintiffs argue that summary judgment was inappropriate with respect to this aspect of the case.
 
 
 48
 The argument is not persuasive. Paragraph 28 of the complaint was expressly denied in Prudential's answer, and our attention has not been called to any part of the record indicating that Prudential denied a valid claim accruing to any of the named plaintiffs prior to cancellation of the policy.
 
 
 49
 When they filed their motion for reconsideration, the plaintiffs tendered an affidavit in which a legal assistant stated that interviews with 45 members of the plaintiffs' proposed classes had disclosed $82,968.81 in claims that remained unpaid through July 31, 1990. The policy was cancelled well before July 31, however, and Prudential is not responsible for claims relating to a period when the policy was no longer in force. Unless valid claims of the named plaintiffs themselves were denied by Prudential, moreover, the named plaintiffs would not be appropriate representatives of the class of persons whose claims had been denied. See East Texas Motor Freight System, Inc. v. Rodriguez, 431 U.S. 395, 403 (1977) (quoting Schlesinger v. Reservists Committee to Stop the War, 418 U.S. 208, 216 (1974)).
 
 IV
 
 50
 The plan and its "unknown trustees" did not enter appearances in the litigation at any point. Although the case was pending in the district court for more than a year and a half before the entry of summary judgment, the plaintiffs never moved for default judgment, apparently never took it upon themselves to find out who the unknown trustees actually were, and never sought leave to file an amended complaint naming them. When summary judgment was granted to Prudential on the eve of trial, therefore, the district court elected to terminate the litigation in its entirety by dismissing the claims against the absent defendants for want of prosecution. The dismissal, as we have noted, was without prejudice.
 
 
 51
 A dismissal for failure to prosecute must be upheld on appeal unless it amounted to an abuse of discretion. See Jourdan v. Jabe, 951 F.2d 108, 109 (6th Cir.1991). We are not prepared to say that an abuse of discretion occurred here. It is true that the district court did not expressly warn the plaintiffs that dismissal of their claims was imminent, and it is true that the plaintiffs met their assigned deadlines at every step of the proceedings. The deadlines only involved the claims against Prudential, however, and subsequent to the filing of the complaint the plaintiffs manifested no interest whatever in pursuing their claims against the unknown trustees. (The plaintiffs admit that they sought no relief against the plan itself.) Under the facts presented, there was obviously a strong likelihood that the trial court would decline to let the case proceed against the unknown trustees if summary judgment were granted to Prudential.
 
 
 52
 AFFIRMED.
 
 
 
 [1]
 The plaintiffs had purported to join the plan as a defendant as well, although no relief was sought against the plan, and it is not clear to us how one could sue the plan other than by suing the trustees in any event. The district court apparently assumed that the plaintiffs were asserting claims against the plan, and the court dismissed these claims as well
 
 
 [2]
 At no time during the pendency of the litigation did the plaintiffs seek a default judgment
 
 
 [3]
 The plaintiffs sometimes seem to blur the distinction between individual claims and claims asserted on behalf of the plan. As noted in Adcox v. Teledyne, Inc., 810 F.Supp. 909, 917 (N.D.Ohio 1992), aff'd 21 F.3d 1381 (6th Cir.1994), however, "[a] claim for breach of fiduciary duty is distinct from a claim for payment of benefits. The two claims are not interchangeable."
 
 
 [4]
 The plaintiffs concede, as they must, that statutory responsibility for the issuance of COBRA notices rested with the plan administrator, GF Corporation. See 29 U.S.C. Sec. 1166(a)(4). They argue, however, that Prudential was a co-fiduciary, and as such was required to make reasonable efforts to remedy GF's breach of duty if Prudential knew of it. See 29 U.S.C. Sec. 1105(a)(3). The district court rejected this argument on the ground that it "would obliterate the statutory designation of the plan administrator as the person required to give notice." Even if the district court was wrong in this--and we do not mean to suggest that it was wrong--the scope of Prudential's liability could not exceed that delineated in 29 U.S.C. Sec. 1109. As we have already seen, Sec. 1109 does not provide relief for individual participants and beneficiaries such as the plaintiffs