**Robert RICHARDS, Plaintiff–Appellant,**

v.

**GENERAL MOTORS CORPORATION; General Motors Savings–Stock Purchase Program for Salaried Employees in the United States, Defendants–Appellees.**

No. 92–1500.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 10, 1992.

Decided April 5, 1993.

1228

Michael J. Forster (argued and briefed), Saginaw, MI, for plaintiff-appellant.

Francis S. Jaworski, Stuart R. Cohen (argued and briefed), General Motors Corp., Detroit, MI, for defendants-appellees.

Before: MERRITT, Chief Judge, and MARTIN and MILBURN, Circuit Judges.

MERRITT, Chief Judge.

For three years, plaintiff back-dated quarterly stock transfers and purchases under GM's employee savings plan because the local plan administrator told him to do so. This procedure potentially would allow plaintiff to gain windfall profits by purchasing stock as of an earlier date after it had risen in value. For this conduct, GM discharged him and other employees who had followed the same practices, as well as the local plan administrator who authorized the back-dating.

Plaintiff sued General Motors and its employee savings plan for wrongful discharge and intentional infliction of emotional distress under Michigan law. These claims were dismissed following defendants' motion for summary judgment. Plaintiff was given leave to file an amended complaint stating two additional claims under the federal Employee Retirement Income Security Act ("ERISA"), codified at 29 U.S.C. § 1001 *et seq.*: (1) that defendants breached their fiduciary duties to the plan and to him as a participant in violation of 29 U.S.C. § 1132(a); and (2) that defen-

dants discharged him for exercising or to prevent exercise of ERISA rights in violation of 29 U.S.C. § 1140. The district court then dismissed Counts I and II of the amended complaint.[1] Plaintiff appeals the dispositive rulings on both complaints. The most difficult issue on appeal is whether under agency principles of "apparent authority" GM's local plan administrator had the authority to bind GM, her principal, to this unusual construction of the ERISA plan. For the reasons stated below, we affirm the district court's rulings regarding plaintiff's state law claims and reverse the dismissal of the ERISA claims, remanding for further proceedings.

## I.

Plaintiff was hired by GM in 1966, and was employed full-time until his termination in 1990. His position at that time was Suggestions Coordinator at GM's Chevrolet–Pontiac Canada plant in Bay City, Michigan. As part of its various employee benefit plans covered by ERISA, GM offered a Savings–Stock Purchase Plan ("savings plan"), under which plaintiff could direct GM to withhold up to fifteen percent of his salary to purchase GM stock and other investments under any of several different options. These assets would be held in his employee account until his retirement, and GM provided matching contributions on a percentage basis.

Up to four times annually, employees were permitted to transfer existing funds between the various stock-based investments, to change the percentage of their salaries withheld for purchases, and to change the formula under which the withheld funds were divided to purchase the various stock-based investments. In the Bay City plant, these actions were effected by submitting written "applications for transfer" to the local Plan Administrator, Kay Kraeger. Under the written terms of the savings plan, a purchase of new stock (or a transfer among existing stock hold-

---

**1.** Plaintiff voluntarily dismissed, with prejudice, his state-law claims of deprivation of as- sets/conversion.

ings) became "effective on the fifteenth or last day of the month next following or coincident with the date on which written application is received by the corporation for a transfer of assets." By the express terms of the plan, purchases or transfers therefore could not become effective until they were "received." The term "received" was not defined, nor were any specific procedures outlined for submitting the written applications.

Plaintiff elected to participate in the savings plan. He asserts that Kraeger made three representations: (1) local administrators had an extended period of time following the fifteenth and last days of the month to enter transfer and purchase instructions into the company-wide savings plan computer system; (2) this "grace period" or "input period" was initially open ended, but was later shortened to 45 days and then to 28 days; and (3) the transfers would be approved by GM as long as the forms were delivered to her within this period. The record does not show whether Kraeger in fact so advised plaintiff and, if so, on what she based her construction of the ERISA plan. Neither does the record show the scope of a local plan administrator's authority to construe the plan or facts relevant to her apparent authority so to interpret the plan and so to advise plaintiff and other employees.

The back-dating practice would, in theory, allow plaintiff to make a windfall profit on securities by directing Kraeger to purchase securities for his account which had risen in value between the fifteenth or last day of the month and the date on which he actually delivered his instructions to her. Defendants could not state with certainty either in their brief or at oral argument whether and to what extent such windfall profits ever actually occurred, and the record is silent on this question as well. Plaintiff submitted his forms following Kraeger's suggested procedure, turning in transfer applications dated earlier than the dates on which he actually submitted them. Each of his transactions were approved and

implemented for about three years. GM then discharged Kraeger, plaintiff, and several other employees, and plaintiff commenced the actions culminating in this appeal.

## II.

Defendants filed a motion pursuant to Fed.R.Civ.Proc. 12(b)(6) to dismiss plaintiff's ERISA claims. As permitted under the Rule, the district court held that to the extent matters outside the pleadings were considered, the motion was to be treated as one for summary judgment. We review a district court's grant of summary judgment de novo. *Brooks v. American Broadcasting Cos.*, 932 F.2d 495, 500 (6th Cir.1991). We must view the facts in a light most favorable to the plaintiff. *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir.1991). All we have in the record to support the summary judgment on plaintiff's ERISA claims is the district court's conclusion that plaintiff's actions "cannot be thought right or honest," so no relief is due. Discovery was never completed. Plaintiff served interrogatories on the issues of Kraeger's authority to construe the plan and GM's procedure for accepting and approving the transfer applications from employees. The district court did not rule on plaintiff's motion to compel when defendant objected to these questions. Plaintiff alleges facts that, with further discovery, may vindicate his claim. These "genuine issues of material fact" render summary judgment improper at this time.

In Count I of his amended complaint, plaintiff claims that defendants breached their fiduciary duties under ERISA to properly administer the savings plan by (1) discharging him and (2) "reconciling" his account by rescinding his back-dated investment elections and the corresponding contributions by GM. The relevant provisions of ERISA are 29 U.S.C. §§ 1132, 1104, and 1109. Section 1132 provides for civil causes of action to enforce the statutory scheme.[2] Section 1104 defines the stan-

---

**2.** Section 1132 states in relevant part:
    **(a) Persons empowered to bring a civil action**
    A civil action may be brought—

    (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

dard of care for a fiduciary under the Act.[3] Section 1109 sets out the extent of a fiduciary's liability in the event of a breach of this duty of care.[4]

■ The district court considered the various theories under which plaintiff might recover pursuant to § 1132, and rejected them all. Guided by the Supreme Court in *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134, 142, 105 S.Ct. 3085, 3090, 87 L.Ed.2d 96 (1985), the district court held that § 1132(a)(2) (which refers to § 1109) provides for relief only to a *plan*, not to participants or beneficiaries. We agree. In *Russell*, the Supreme Court held that plan administrators cannot be held liable for extracontractual punitive or compensatory damages resulting from a breach of fiduciary duty under § 1109. Since any loss to plaintiff in the unwinding of his transactions would automatically produce a net gain to the savings plan, he may not challenge GM's actions under this subsection.

■ The district court further held that § 1132(a)(3) requires breach of a *contractual* fiduciary obligation before relief may be granted. The majority of courts have extended the Supreme Court's holding in *Russell* to prohibit extracontractual damages based on *any* fiduciary provisions of ERISA. *See, e.g., Harsch v. Eisenberg*, 956 F.2d 651, 656 (7th Cir.) (reversing an award of compensatory damages), *cert. denied, Bihler v. Eisenberg*, —— U.S. ——,

113 S.Ct. 61, 121 L.Ed.2d 29 (1992); *Sokol v. Bernstein*, 803 F.2d 532, 537–38 (9th Cir.1986) (holding damages unavailable for emotional distress). Plaintiff argues that this case should be governed by our decision in *Warren v. Society National Bank*, 905 F.2d 975 (6th Cir.1990), in which we found a narrow exception to this rule. We approved Warren's ERISA claim against the defendant bank because it had violated an express contractual agreement with him, subjecting him to tax liability. We agree with the district court that a breach of a contractual duty is required for liability to attach under § 1132(a)(3). We cannot agree, however, that no such breach was possible as a matter of law based on the facts before the court.

It is true defendants had no *express* contractual obligation to make plaintiff's backdated transfer applications effective as of the dates he requested. Page 14 of the savings plan prospectus provides: "A transfer of assets is effective on the fifteenth or last day of the month next following or coincident with the date on which written application is received by the Corporation for a transfer of assets." The savings plan text provides at 28: "The term 'Effective Date of Transfer of Assets' shall mean the 15th or last day of the month next following or coincident with the date on which written application to the Trustee is received by the Administrator for a transfer of assets."

---

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan

.    .    .    .    .

3. Section 1104 states in relevant part:

§ 1104. Fiduciary duties
(a) Prudent man standard of care
(1) ... [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries ...
(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capaci-

ty and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims....

4. Section 1109 provides:

§ 1109. Liability for breach of fiduciary duty
(a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

Defendants have now construed these provisions in such a manner as to disallow back-dated transactions, and prospective application of their construction must be accorded deference by this court. The savings plan provides at 45 that "[t]he Management Committee of the Corporation, or its delegate, shall have responsibility for the day to day operation, management, and administration of the Program, including full power and authority to construe, interpret, and administer this program." As stated by the Supreme Court in *Firestone v. Bruch*, 489 U.S. 101, 111, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989), "where discretion is conferred upon the trustee with respect to the exercise of power, its exercise is not subject to control by the court except to prevent an abuse by the trustee of his discretion." However, nothing in the savings plan text gives the committee authority to *retroactively* disallow transactions it previously had approved. Plaintiff asserted in his amended complaint that he acted under the *direct instructions* of Kraeger, the employee appointed by defendants to administer the savings plan at the Bay City plant, and that his transactions were approved by the defendants for three years. These assertions raise a triable issue concerning defendants' liability under principles of agency. The district court did not permit sufficient discovery to resolve this issue.

For guidance on general agency principles, we turn to the Restatement (Second) of Agency (1983). Section 27 provides that "apparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." Plaintiff points to several actions by defendants that could lead him reasonably to believe Kraeger had authority to bind defendants as to the disputed transactions. As the commentary to § 27 points out, "apparent authority can be created by appointing a person to a position ... which carries with it generally recognized duties; to those who know of the appointment there is apparent authority to do the things ordinarily entrusted to one occupying such a position." *Id.* at cmt. *a.* The savings plan provides that the transfers were effective as of the date "received" by the Administrator, the Corporation. Defendants appointed Kraeger local Plan Administrator to "receive" the transfers on their behalf. Plaintiff asserted in his complaint that he had never worked as a pension benefits administrator, and that he depended on Kraeger to explain and interpret the savings plan as to the manner in which his investment elections should be prepared for processing. Construing these facts with all inferences drawn in favor of the non-moving party, it seems reasonable that plaintiff would follow the administrative instructions of the person defendants appointed to administer the plan. Testimony from Kraeger and documents outlining her authority to accept forms during any "input period" would be highly relevant; such factual inquiry was pretermitted by the premature grant of summary judgment to defendants.

■ Defendants assert that Kraeger's actions were unauthorized, taking her actions out of the scope of her duties and thus absolving them of liability. But apparent authority may attach even when the agent's acts are unauthorized. The commentary to § 159 of the Restatement, which defines apparent authority, states that "when a principal refers others to an agent ... for information, such person becomes the spokesman for the principal to them, with apparent authority to make statements upon the subject matter as to which reference is made, and the principal is bound by such apparently authorized statements or promises." *Id.* at § 159 cmt. *f.* Defendants admitted that questions about benefits were appropriately directed to an employee's personnel office or supervisor. We are unable to determine whether a fully developed record, viewed in a light most favorable to plaintiff, would establish binding apparent authority in this case.

■ Defendants argue that any such statements or representations to plaintiff

are excluded under the parol evidence rule, since the savings plan was "integrated," stating on its face that "[n]o person is authorized to give any information or to make any representations not contained or incorporated by reference in this Prospectus, and any information or representation not contained or incorporated by reference herein must not be relied upon as having been authorized by General Motors Corporation." Under the parol evidence rule, extrinsic evidence for the purpose of modifying or adding to the terms of the agreement would be inadmissible. However, extrinsic evidence may be used even in conjunction with an integrated contract to illuminate the circumstances under which the agreement was consummated. *Id.* at § 48 cmt. *b.* Furthermore, the savings plan and its prospectus are 50 pages long. Even at that level of detail, no explanation is given for what constitutes "receipt by the Corporation" of an application for transfer. The parol evidence rule would not exclude evidence of representations made by the local plan administrator *interpreting* such undefined terms in a manner consistent with the overall plan.

Finally, "affirmance of an unauthorized transaction can be inferred from a failure to repudiate it." *Id.* at § 94. Defendants accepted plaintiff's transactions for three years. Plaintiff asserts that the computer system used to "receive" the transactions automatically date-stamped them as of the date of entry, in addition to the date specified by the employee that was actually input from the form itself. Viewed in a light most favorable to plaintiff, these facts raise a triable question of whether plaintiff's unauthorized transactions were ratified, and defendants have not produced rebuttal evidence sufficient to support summary judgment.

In considering a motion under Rule 12(b)(6) or Rule 56(c), the court was required to view the facts in a light most favorable to the non-moving party. Instead, the district court determined that plaintiff's assertions were completely incredible, affording them no weight whatsoever. Plaintiff's actions were consistently referred to as "the scheme," "inappropriate behavior," "improper behavior," and activity that "cannot be thought right or honest." These factual findings were premature in the context of a motion to dismiss or motion for summary judgment.

■ Plaintiff claimed in Count II of his amended complaint that defendants violated section 510 of ERISA (29 U.S.C. § 1140), which provides in relevant part:

> § 1140. **Interference with protected rights**
>
> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan....

The district court dismissed Count II on several alternative grounds. We reverse for the same basic reasons.

The court's first two grounds for dismissal were that plaintiff had not claimed that defendants terminated his employment in order to prevent him from exercising or attaining a right he had under the savings plan, nor had he identified which "right" under the terms of the savings plan he was entitled to exercise or attain. This is an extremely stingy reading of plaintiff's complaint. He specifically alleged that he was discharged because of his savings plan transactions (First Amended Complaint ¶ 26), and that he had a right to make the transactions he made under the savings plan as interpreted by its administrators (¶ 27). The pleading requirements for § 1140 were met by these assertions.

Another stated ground for dismissal was that plaintiff could not possibly prevail on his claim that the savings plan gave him the right to back-date his transfer applications. We have already explained why such a right may have been conferred on plaintiff under the apparent authority of defendants' agent Kraeger. If plaintiff's actions were based on *justifiable* reliance on Kraeger, a genuine factual issue, then

his discharge for such actions constitutes impermissible retaliation in violation of § 1140.

## III.

■ The district court granted defendants' motion for summary judgment on plaintiff's state-law claims of wrongful discharge and infliction of emotional distress, concluding that plaintiff was employed on an at-will basis, and GM therefore had the right to discharge him for any reason (or no reason) at any time. We review a district court's interpretation of state law de novo. *Salve Regina College v. Russell*, — U.S. —, —, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

The court based its conclusion on the employment agreement signed by plaintiff when he was hired, which states:

> 2. The employee acknowledges that his employment under this agreement is from month to month only on a calendar month basis....
>
> . . . . .
>
> 5. The Employer and the Employee acknowledge that there are no other arrangements, agreements, or understandings ... regarding same and that any modification or amendment hereof, other than a cancellation and replacement hereof by another written form of agreement, must be endorsed hereon in writing and initialed by both the Employee and the Employer.

Plaintiff urges us to hold this agreement non-binding, asserting that GM made statements, written and oral, that created an implied contract of employment terminable only for "just cause."

The Michigan Supreme Court in *Toussaint v. Blue Cross and Blue Shield of Michigan*, 408 Mich. 579, 610, 292 N.W.2d 880 (1980), recognized a limited exception to the general rule that employment for an indefinite term (e.g., month to month) is terminable at will:

> Employers are most assuredly free to enter into employment contracts terminable at will without assigning cause. We hold only that an employer's express

agreement to terminate only for cause, or statements of company policy and procedure to that effect, can give rise to rights enforceable in contract.

This court considered language identical to that contained in plaintiff's employment agreement in *Taylor v. General Motors Corp.*, 826 F.2d 452, 457 (6th Cir.1987), and held that the plaintiff could have had no legitimate expectation that he would be discharged only for cause because the contract explicitly provided that it was not subject to modification. Interpreting the same (or very similar) GM form contracts in subsequent decisions, the Michigan Court of Appeals has cited to *Taylor* and dismissed the claims of similarly situated plaintiffs. *See Parkinson v. General Motors Corp.*, No. 125956 (Mich.Ct.App., Aug. 9, 1991); *Freer v. General Motors Corp.*, No. 126599 (Mich.Ct.App., Apr. 23, 1992).

Attempting to distinguish these cases, plaintiff asserts that he did not understand the "month to month" language to mean he was terminable at will; he thought it meant only that he would be paid monthly. This argument was squarely rejected by the Michigan Supreme Court in *Scholz v. Montgomery Ward*, 437 Mich. 83, 92, 468 N.W.2d 845 (1991): "It is well settled that the failure of a party to obtain an explanation of a contract is ordinary negligence.... If plaintiff did not understand the terms of the [agreement] she had a duty to inquire about its contents."

■■ Plaintiff also points to documents interpreting the GM employment agreement that may not have been introduced in the above-cited cases. A document entitled "Your GM Benefits" lists several separation classifications: Retirements, Quit, Final Release, Mutually Satisfactory Release, Special Separation, and Discharge. The Discharge section states "[r]easons for discharge may include dishonesty, willful violation of instructions or Corporate Policy, insubordination, or refusal to comply with governmental requirements related to employment. In addition, conduct reflecting badly on the Corporation, even if it occurs away from the job, may be viewed as grounds for discharge."

Plaintiff argues this implicitly limits discharge to "just cause." Plaintiff also cites to sections on "Employment Security" that describe the efforts GM will make to retain its employees in layoff situations and concerning dual-career couples. To overcome the presumption of an employee-at-will status created by the written agreement, plaintiff must demonstrate a subjective and objective expectancy that his employment is terminable for cause only. *Rowe v. Montgomery Ward and Co.*, 437 Mich. 627, 473 N.W.2d 268, 273 (1991). While each of the quoted provisions seems designed to reassure employees that GM will act reasonably and retain employees where practical, none of them provides any express limitations on GM's power to fire.

We hold that Michigan courts probably would interpret plaintiff's employment agreement as they have read nearly identical agreements in the past: "month to month" employment gives the employer the right to terminate the employee at will. We also find that the materials plaintiff refers to in support of his claim cannot provide an objective expectancy of just-cause employment. We therefore affirm the district court's dismissal of plaintiff's state-law claims.

## IV.

Finally, the district court based dismissal of plaintiff's ERISA claims on his failure to exhaust his administrative remedies as required by this court in *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir.1991). The district court found that plaintiff had not made a claim for benefits under the savings plan, and that even if his actions somehow constituted such a claim, he had not sought review of the denial of the claim under the review provisions of the savings plan, which provides:

> The Administrator will provide adequate notice in writing to any Participant or beneficiary whose claim for benefits under the Program has been denied, setting forth the specific reasons for such denial. The Participant or beneficiary will be given an opportunity for a full and fair review by the Named Fiduciary, or its delegate, of the decision denying the claim. The Participant or beneficiary will be given 60 days from the date of the notice denying such claim within which to request such review.

Savings plan at 50. He further found that plaintiff had not presented any evidence indicating that such an appeal under the savings plan would have proven futile. We find that plaintiff's retaliatory discharge claim is not precluded under this theory.

First, the district court is mistaken concerning plaintiff's claim. Paragraph 36(a) of his amended complaint specifically alleges loss of benefits. Furthermore, § 1140 encompasses *all* the rights of ERISA plan participants and beneficiaries, not just claims for benefits, including "the attainment of any right to which such participant *may become entitled* under the plan." 29 U.S.C. § 1140 (emphasis supplied). Plaintiff's claim of retaliatory discharge is based directly on this section, as an interference with a right properly his under the savings plan. The "denial of claim" provisions from the savings plan are therefore not necessarily applicable.

Furthermore, plaintiff wrote Dick Huber, Chevrolet–Pontiac–Canada Director of Personnel, on May 23, 1990; and John E. Cryer, Executive Compensation and Employee Relations, on June 28, 1990. In each letter, he protested his termination, affirmatively stated his belief that his actions were justified under the savings plan guidelines, and requested reinstatement. He then wrote Gary R. Snyder, Regional Personnel Administration, the person who wrote plaintiff concerning the "reconciliations" being performed on his account, on September 30, 1990, threatening suit if his reinstatement appeal under GM's Open Door Policy was unsuccessful, and requesting that GM keep up with what his account would have earned had it not been adjusted. None of these actions resulted in his reinstatement, and none of these parties saw fit to direct plaintiff to lodge an appeal with any other entity. Contrary to the district court's finding, these documents, if construed in a light most favorable to the

non-movant, are sufficient to support plaintiff's conclusion that further efforts would have been futile, rendering summary judgment on this theory improper as well.

### V.

GM terminated plaintiff for his unorthodox manner of participation in the employee savings plan. His at-will employment contract leaves him no redress under Michigan law. Further proceedings may demonstrate that the termination was entirely justified under ERISA as well, but the requirements of Federal Rule of Civil Procedure 56(c) have not yet been met. Plaintiff has raised a genuine issue of material fact under principles of agency law as to whether his transaction activity was tacitly authorized or approved by defendants; consequently, summary judgment is not proper at this point. We therefore AFFIRM the judgment of the district court as to dismissal of plaintiff's state law claims. We REVERSE the dismissal of plaintiff's claims under ERISA, and REMAND for further proceedings not inconsistent with this opinion.