**Steven DANIELS, et al., Plaintiffs,**

v.

**NATIONAL EMPLOYEE BENEFIT SERVICES, INC., et al., Defendants/Third–Party Plaintiffs,**

v.

**Steven DANIELS, et al., Third–Party Defendants.**

**No. 1:92CV2001.**

United States District Court, N.D. Ohio, Eastern Division.

Feb. 23, 1995.

Christopher S. Williams, Calfee, Halter & Griswold, Jeffrey L. Nischwitz, Law Offices of Jeffrey L. Nischwitz, Cleveland, OH, for plaintiffs and third-party defendants

Robert J. Hanna, Arter & Hadden, Cleveland, OH, Danny L. Cvetanovich, Arter & Hadden, Columbus, OH, for defendants/third-party plaintiffs.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

Steven Daniels, George Daniels, the Daniels Furniture Pension Plan and Trust, the Daniels Furniture Retirement Plan and Trust, and the Electra Acceptance Corporation (collectively "plaintiffs") bring this action against National Employee Benefits, Inc. ("NEBS"), Bruce Kosinski, and Beka Agency, Inc. (collectively "defendants"), pursuant to 29 U.S.C. § 1132(a), 28 U.S.C. § 2201, and Ohio common law.

Daniels asserts a nine count second amended complaint, alleging generally that the defendants violated their fiduciary duties as Plan administrator in selling securities and insurance to the Plans while collecting a commission and in conducting the termination of the Pension Plan, as well as that the defendants committed common law fraud in the sale of securities to the Plans. Specifically, the plaintiffs allege in Count One that the defendants engaged in transactions in violation of 29 U.S.C. § 1106(b); in Count Two, that the defendants engaged in transactions in violation of 29 U.S.C. § 1106(a); in Count Three, that the defendants breached their fiduciary duties to the Plans in violation of 29 U.S.C. § 1104(a)(1); in Count Four, that the defendants violated 29 U.S.C. § 1132(c)(1); in Count Five, that each of the defendants is jointly and severally liable for the violations of the others under 29 U.S.C. § 1105(a); in Count Six, that Kosinski and Beka are liable for their knowing participation in NEBS' acts, even if Kosinski and

Beka are not fiduciaries; in Count Seven, that the defendants breached fiduciary duties and contractual obligations in terminating the Pension Plan; in Count Eight, that the plaintiffs are entitled to a declaration of their rights under 28 U.S.C. § 2201; and in Count Nine, that the defendants committed common-law fraud in the sale of investments.

The plaintiffs have stipulated to a voluntary dismissal of Counts Six and Nine.

The defendants assert a counterclaim against Electra, alleging that NEBS provided services, pursuant to contract, for the termination of a benefits plan, but was not compensated for these services. Count One of the counterclaim alleges breach of contract, and Count Two seeks recovery in *quantum meruit* or *quantum valebant*. The defendants also assert an amended third party complaint against the Daniels, seeking contribution from each of the Daniels for any amount recovered against the defendants.

This Court has previously held that the defendants acted as fiduciaries with respect to the plans at issue and violated ERISA by engaging in prohibited transactions. *Memorandum and Order of June 30, 1994* (published at 858 F.Supp. 684). In doing so, this Court entered judgment in favor of the plaintiffs on Counts One, Two, Three, Five, and Eight. These Counts are identical to Counts One, Two, Three, Five, and Eight in the second amended complaint. The defendants did not move to alter, amend, or modify the judgment pursuant to Rule 59(e).

The defendants' current motions were filed on October 28, 1994. The defendants move for summary judgment on the remaining counts of the second amended complaint; the plaintiffs oppose the motion. The defendants also move for summary judgment on their counterclaim and on the amended third party complaint; the plaintiffs oppose these motions as well. The plaintiffs move for judgment on the pleadings on the defendants' amended third party complaint, and the defendants oppose that motion. For the reasons set out below, the defendants' motion for partial summary judgment on the second amended complaint is denied; the defendants' motion for summary judgment on the counterclaim is granted in part and denied in part; the defendants' motion for summary judgment on the amended third party complaint is denied; and the plaintiffs' motion for judgment on the pleadings on the amended third-party complaint is granted.

## I.

The following facts are undisputed.

Steven and George Daniels are the trustees of the Daniels Furniture Pension Plan and Trust and the Daniels Furniture Retirement Plan and Trust, of which Daniels Furniture is the sponsor. NEBS was the Plan administrator during the events in question. Kosinski owns 50% of NEBS' common stock and is NEBS' president; Kosinski's wife owns the remaining 50% of the shares. Kosinski is the only person with authority to act on NEBS' behalf. Kosinski is the sole shareholder of Beka, Inc., as well as its sole officer and the only person with authority to act on Beka's behalf.

In 1984, the plaintiffs contracted with NEBS for the purpose of establishing the two Plans. After the establishment of the Plans, NEBS, through Kosinski, began acting as the Plan administrator; this entailed the authority to offer investment "instruction," pursuant to the Plan agreement, although NEBS did not in fact offer investment advice. Kosinski, however, purportedly acting as an individual rather than in his capacity as president of NEBS, did offer advice regarding sales of securities products to the Plans. Beka, also acting solely through Kosinski, offered insurance products to the Plans. Kosinski collected a commission on these sales of securities and insurance products, although he did not collect any salary or commission from NEBS. Until 1989, Kosinski annually met with the plaintiffs to offer investment advice. The Plans relied on this advice exclusively until 1988.

The Daniels were of course aware that they relied exclusively on Kosinski's investment advice through 1988. They also knew that Kosinski, but not NEBS, was collecting a commission on sales of securities to the Plans. The Daniels offer evidence to demonstrate that they were unaware of Beka's role, however. That is, the Daniels were not

aware that insurance products were sold to them through Beka or that Beka collected any commission on the sale of such products. In addition, the Daniels had no knowledge of Kosinski's ownership interest in Beka.

On May 28, 1991, NEBS sent a letter to Steven Daniels in his capacity as an officer of the Electra Acceptance Corporation. The letter related to amending and restating the Daniels Furniture Retirement Plan and Trust. The letter sought authorization to perform certain services, in return for reimbursement. According to the letter, "[t]he related services covered by these expenses are:

1) An Annual Asset Valuation.

2) Preparation and Filing of the annual 5500 and appropriate Schedules.

3) A report to the Trustees of the required contribution amounts.

4) Determine eligibility and vested interests of each participant.

5) Compute costs and benefits for existing and new participants.

6) Maintain individual account records and allocate employer contributions, trust fund earnings, forfeitures, etc.

7) Statements for each participant in the plan and their individual benefits.

8) Provide a consolidated Trustees Report."

The letter stated that any other services performed would be charged "on a separate basis." Steven Daniels signed this letter and returned it to NEBS. NEBS performed the services detailed in the letter. On October 28, 1991, NEBS sent an invoice to Electra seeking payment for these services in the amount of $1,815.00. Electra has not paid this invoice.

Steven Daniels, who is both a trustee and a participant of the Plans, offers evidence that he requested a copy of certain Plan documents from the defendants. Daniels made this request after a company with whom the Plan had contracted for its termination asked Daniels for these documents. Daniels also offers testimony that these documents were not provided within thirty days.

## II.

■ A. Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law ...

Rule 56(e) specifies the materials properly submitted in connection with a motion for summary judgment:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein ... The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *White v. Turfway Park*

*Racing Assn., Inc.,* 909 F.2d 941, 943–44 (6th Cir.1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. at 2512.

■ B. Fed.R.Civ.P. 12(c) provides that, after the pleadings are closed, any party may move for judgment on the pleadings. In considering such a motion, this Court must accept all the factual allegations of the complaint as true. *Paskvan v. City of Cleveland Civil Service Commission,* 946 F.2d 1233, 1235 (6th Cir.1991). However, the Court need not accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 2944, 92 L.Ed.2d 209 (1986). The motion should be granted only if there are no material issues of fact and the moving party is entitled to judgment as a matter of law. *Lavado v. Keohane,* 992 F.2d 601, 605 (6th Cir.1993).

### III.

The motions before this Court raise the following issues: 1) whether the plaintiffs' ERISA claims are timely filed; 2) whether a trustee who is also a participant can maintain an action under § 1132(c)(1) when he requested plan documents in his capacity as trustee but sues in his capacity as a participant; 3) whether the defendants are entitled to contribution from the Daniels for the breaches of fiduciary duty; and 4) whether the defendants are entitled to judgment on their contract and unjust enrichment claims against Electra. Each of these issues is discussed below.

■ A. The defendants seek summary judgment on the breach of fiduciary duty counts of the second amended complaint on the ground that the action is untimely filed.

This issue is not properly before this Court. In its *Memorandum and Order of June 30, 1994,* this Court not only denied the defendants' motion for summary judgment but granted the plaintiffs' cross-motion for summary judgment on the issue of liability. Accordingly, this Court entered judgment in the plaintiffs' favor on Counts One, Two, Three, Five, and Eight of the complaint. Although the plaintiffs subsequently amended the complaint, the new Counts One, Two, Three, Five and Eight are identical to the earlier counts on which this Court granted judgment. The defendants did not timely seek relief under Rule 59(e), nor did they raise the statute of limitations issue in their earlier motion.

Oddly, neither side raises this question. Nonetheless, the defendants' current motion for summary judgment is untimely, since it is offered after this Court has entered judgment on the challenged claims. This Court will not entertain a motion for summary judgment on the issue of liability proffered several months after this Court granted the plaintiffs' motion for summary judgment and awarded the plaintiffs judgment on the claims at issue. Accordingly, the defendants' motion for summary judgment on Counts One, Two, Three, Five, and Eight of the second amended complaint is denied.

■ B. Title 29, U.S.C. § 1132(c) provides:

Any administrator who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days of such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

Section 1132(a)(1)(A) empowers only participants or beneficiaries to bring an action for statutory damages to enforce this provision.

The defendants maintain that because only a participant or beneficiary is authorized to bring a suit for damages to enforce this provision, a trustee who is also a participant but who requests plan documents from other trustees in his capacity as a trustee is barred from bringing an action for damages. The defendants offer no authority in support of this proposition, and this Court has located none. This position, furthermore, is in conflict with the plain language of the statute. The section draws a clear distinction between the capacities in which a participant who is also a trustee sues under the section, but it makes no distinction between the capacities in which a participant who is also a trustee requests documents. The defendants' contention is without merit, and their motion for summary judgment on Count Four of the second amended complaint is denied.

■ C. Title 29, U.S.C. § 1132(a) lists those empowered to bring civil actions under ERISA. Fiduciaries may do so for only the following purposes:

> ... for appropriate relief under section 1109 of this title; [and] ... (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(2), (3). Section 1109 provides:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good *to such plan* any losses to the plan resulting from each such breach, and to restore *to such plan* any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109 (emphasis added). Section 1105(a) provides:

> In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
>
> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
>
> (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
>
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. §§ 1105(a) and 1105(a)(3).

Thus, a fiduciary seeking to assert a right of contribution against another fiduciary has two possible statutory avenues available; the first is an action pursuant to § 1132(a)(2) for appropriate relief under § 1109, and the second is an action under § 1132(a)(3) for appropriate equitable relief to redress a violation of § 1105(a). The first avenue is foreclosed, however, because any recovery to redress a violation of § 1109 must, according to the section's plain language, be on behalf of the plan, not an individual fiduciary. *See Richards v. General Motors Corp.*, 991 F.2d 1227 (6th Cir.1993); and *Kim v. Fujikawa*, 871 F.2d 1427 (9th Cir.1989) (§ 1109 does not authorize an action for contribution against a fiduciary by another fiduciary, because recovery under § 1109 is limited to the plan).

The remaining question, then, is whether § 1132(a)(3) permits an action for contribution by a fiduciary who has been held liable to a plan against another fiduciary for his liability under § 1105(a). Nothing in § 1105(a), or in any other provision of ERISA, expressly creates a right of contribution between fiduciaries. Section 1105(a) makes it clear that a fiduciary, under certain circumstances, can be jointly liable for another fiduciary's breach of duty. This alone, however, does not establish a right of contribution between fiduciaries. *See Texas Industries, Inc. v. Radcliff Materials*, 451 U.S.

630, 644, 101 S.Ct. 2061, 2069, 68 L.Ed.2d 500 (1981) (availability of joint and several liability does not imply availability of right of contribution, since joint and several liability does no more than establish that a plaintiff shall recover full amount of damages from some, if not all, liable wrongdoers).

At least two courts have held that § 1105(a) does not provide a right of contribution. *Schloegel v. Boswell*, 766 F.Supp. 563 (S.D.Miss.1991); and *Mutual Life Insurance Co. of New York v. Yampol*, 706 F.Supp. 596 (N.D.Ill.1989). The *Yampol* court noted that a right to contribution may arise in either of two ways: "first, through the affirmative creation of a right of action by Congress, either expressly or by clear implication; or second, through the power of federal courts to fashion a common law of contribution." *Yampol*, 706 F.Supp. at 597, *citing Texas Industries*, 451 U.S. at 638, 101 S.Ct. at 2066. That court then determined, as has this Court, that § 1105 does not reflect an affirmative creation of a right of contribution.

Thus, neither statutory avenue is available to assert a right of contribution. Federal common law, however, provides a second possible basis for a right of contribution, even absent a statutory grant of such a right. There are two instances in which courts are authorized to formulate federal common law: "those in which a federal rule of decision is necessary to protect uniquely federal interests, . . . and those in which the Congress has given the courts the power to develop substantive law." *Texas Industries*, 451 U.S. at 640, 101 S.Ct. at 2067 (citations omitted). Contribution does not fall into the first category. *Id.* at 642, 101 S.Ct. at 2068; and *Yampol*, at 599. In addition, nothing in the language of ERISA or its legislative history suggests that Congress has given courts power to develop substantive law in this area. *Yampol*, at 599, *citing, McLendon v. Continental Group, Inc.*, 7 Employee Benefits Cas. (BNA), 2403, 2406, 1986 WL 11789 (D.N.J.1986). *See also Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134, 147, 105 S.Ct. 3085, 3093, 87 L.Ed.2d 96 (1985) (omission of specific remedy from ERISA scheme strongly suggests that Con-

gress did not intend to provide such a remedy).

At least one court has held that federal common law provides a right of contribution under ERISA. *Chemung Canal Trust Co. v. Sovran Bank/Maryland*, 939 F.2d 12 (2nd Cir.1991). The Second Circuit there held, over a partial dissent, that "Congress's failure to include enforcement provisions to address the relationships among fiduciaries does not necessarily mean that Congress intended to preclude such remedies." *Id.*, at 18. Because the primary purpose of ERISA is to protect participants and beneficiaries, and because the existence of a right of contribution is irrelevant to that purpose, the *Chemung* court felt itself free to fashion a right of contribution among fiduciaries from the common law of trusts. This Court, however, agrees with the dissent's view that, given Congress' knowledge of the common law of trusts:

> Essentially, Congress' omission of all references to the allocation of costs among fiduciaries for joint liabilities demonstrates its rejection of the scheme of contribution and indemnification adopted by the majority. Simply stated, if Congress had intended to include a right of contribution and indemnification it would have done so.

*Id.*, at 19 (Altimari, J., concurring in part and dissenting in part).

ERISA does not provide a right of contribution among fiduciaries. The plaintiffs, therefore, are entitled to judgment as a matter of law on this claim.

D. The defendants move for summary judgment on their counterclaim against Electra Corporation for breach of contract and *quantum meruit* or *quantum valebant* recovery. Each of these claims is addressed in turn below.

### 1. *Breach of contract*

■ The parties do not dispute that NEBS sent to Electra a letter which sought authorization to perform work regarding amending and restating the Daniels Furniture Retirement Plan and Trust. The letter stated the connected expenses and specified the services covered by these expenses. Any

other charges were to be charged on a separate basis. There is no dispute that the letter, on its face, does not refer to services rendered in the termination of the plan. There is a dispute regarding the parties' understanding of this letter; Electra maintains that the letter was part of a broader agreement to terminate the plan. However, nothing in the language of the contract for the provision of amendment and restating services supports this understanding. In the face of clear contractual language obligating Electra to pay for these services independently of any other services, the deposition testimony offered by Electra regarding Steven Daniels' understanding of Electra's obligations fails to create a genuine issue of fact concerning the extent of those obligations.

NEBS sent an invoice to Electra in the amount of $1,815 for services rendered in connection with the performance of the contract to amend the plan. Electra did not pay this invoice. Because there is no disputed issue of material fact concerning Electra's obligation to do so, NEBS is entitled to judgment in its favor on this claim.

■ Electra suggests that NEBS' motion is premature, because the parties have not yet resolved their dispute concerning NEBS' performance of services in connection with termination of the plan. Electra maintains that these issues should be resolved simultaneously, especially because any amount Electra owes to NEBS will be a set-off to the amount NEBS will owe to Electra should Electra prevail on its claim that the termination was not properly performed. This Court, however, fails to see any consideration militating in favor of deciding these issues in any particular order. Neither party is prejudiced by a ruling on NEBS' motion, which is properly before this Court. In addition, whether the amount of the judgment against Electra on the counterclaim can be set off against a judgment against NEBS is irrelevant to the question of whether Electra is in fact liable to NEBS. The question of set-off can be resolved in a timely fashion after this Court resolves the issue of the plaintiffs'

damages on the claims on which they have prevailed.

### 2. *Unjust enrichment*

■ In Ohio, "[i]n the absence of fraud or bad faith, a person is not entitled to compensation on the ground of unjust enrichment if he received from the other that which it was agreed between them the other should give in return." *Ullmann v. May,* 147 Ohio St. 468, 72 N.E.2d 63, Syll. at ¶ 4 (Ohio 1947). Thus, "Ohio permits no recovery on [an unjust enrichment theory] where, as here, an express contract covers the same subject." *Randolph v. New England Mutual Life Insurance Co.,* 526 F.2d 1383, 1387 (6th Cir. 1975) (citation omitted). Any fraud or bad faith that negates the operation of this rule must occur in the formation of the contract, rather than at some other point in the parties' relationship. *Eyerman v. Mary Kay Cosmetics,* 967 F.2d 213, 222 (6th Cir.1992).

■ NEBS and Electra do not dispute, and this Court has found, that a contract governs their respective obligations with regard to amendment and restating of the retirement plan.[1] Absent an allegation of fraud or bad faith in the formation of the contract, then, the contract between NEBS and Electra bars NEBS' claim for recovery in *quantum meruit* or *quantum valebant.* No such allegation of fraud or bad faith is present here. Consequently, NEBS' claim for unjust enrichment fails.

Electra does not cross-move for summary judgment on this claim. However, the parties have been on notice that this matter is before this Court on a dispositive motion, and have fully briefed the issue of its viability. Because the action cannot be sustained as a matter of law, this Court shall dismiss Count Two of the counterclaim *sua sponte.*

### IV.

The defendants' motion for summary judgment on the second amended complaint is not properly before this Court. No material issues of disputed fact remain with respect to

---

1. Although Electra maintains that the specific contract at issue does not obligate it to make payments to NEBS until NEBS performs termination services, Electra nowhere claims that its obligations are not governed by a contract.

the amended third party complaint, and the plaintiffs are entitled to judgment on this claim as a matter of law. No issues of material fact are in dispute with respect to Count One of NEBS' counterclaim against Electra, and NEBS is entitled to judgment on that claim in the amount of $1,815.00. Electra, on the other hand, is entitled to judgment in its favor on Count Two of the counterclaim.

Accordingly, the defendants' motion for summary judgment on the second amended complaint (doc. # 95–1) is denied; the defendants' motion for summary judgment on the amended third party complaint (doc. # 95–2) is denied; the defendants' motion for summary judgment on the counterclaim (doc. # 95–3) is granted with respect to Count One and denied with respect to Count Two; and the plaintiffs' motion for judgment on the pleadings on the amended third party complaint (doc. # 103–1) is granted. Judgment is entered in favor of the plaintiffs on the amended third party complaint, and that complaint is dismissed; judgment is also entered in favor of the plaintiffs on Count Two of the counterclaim, which is also dismissed. Judgment is entered in favor of the defendants on Count One of the counterclaim, in the amount of $1,815.00.

A status call is set for March 31 at 9:30 a.m.

IT IS SO ORDERED.