52 F.3d 327
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 August VESPASIAN and Ina Vespasian, Plaintiffs-Appellants,
v.
Marilyn SWEENEY, Blue Cross and Blue Shield Mutual of Ohio,
Tee Nee Trailer Company Insurance Program, and
Richard Lotze, Defendants-Appellees.
 No. 93-4343.
 United States Court of Appeals, Sixth Circuit.
 April 6, 1995.
 
 Before: JONES, NORRIS and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 The plaintiffs, August and Ina Vespasian, were the beneficiaries of a group health insurance plan provided and administered by Tee Nee Trailer Company, August Vespasian's former employer. When August Vespasian's medical claims were denied because of the company's failure to pay premiums to Blue Cross and Blue Shield Mutual of Ohio, the insurer, the Vespasians brought suit under the Employee Retirement Income Security Act of 1974, 29 U.S.C. Secs. 1001 et seq, and the Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. Sec. 1161. Named as defendants were Blue Cross, the Tee Nee Trailer Insurance Program, and two officers of Tee Nee Trailer, Marilyn Sweeney and Richard Lotze.[1] The complaint alleged (1) breach of fiduciary duty under ERISA by failure to notify the plaintiffs that the premiums had not been paid by Tee Nee Trailer and (2) the failure, under COBRA, to notify the plaintiffs of their right to continued medical insurance coverage. The plaintiffs also alleged (3) that the defendants should be equitably estopped from denying the plaintiffs' medical claims. The district court denied relief, and the plaintiffs now appeal. For the reasons given below, we affirm the district court's judgment.
 
 1. Factual Background
 
 2
 Tee Nee Trailer Company, now bankrupt, had been in business for many years, manufacturing boat trailers. When the work force was unionized in September, 1988, the resulting collective bargaining agreement required the company to purchase medical benefits under an insurance plan referred to as "Blue Cross Blue Shield Super Blue Series 2000 with prescription drugs." The Blue Cross "Super Blue" group policy was secured by the company and named Tee Nee Trailer itself as the administrator of the insurance program. The policy did not otherwise designate a fiduciary. The actual day-to-day management duties fell to Marilyn Sweeney, president of the company, and her son, Richard Lotze, who was Tee Nee Trailer's comptroller.
 
 
 3
 By early summer 1989, the company was experiencing "cash flow problems," and its overall financial situation was becoming precarious, a fact which was known to August Vespasian, who was a long-time Tee Nee Trailer employee and by that time president of the local union. Because Vespasian was scheduled to undergo foot surgery on July 3, 1989, he apparently spoke to Marilyn Sweeney during the month of June 1989, to inquire about insurance coverage for his medical expenses. According to Vespasian, Sweeney assured him that his surgery would be covered by the company's Blue Cross policy.
 
 
 4
 There is no evidence in the record to establish the actual date in June on which this conversation took place. But, regardless of the date, the policy was, in fact, still in effect in June 1989, although the company had been late in paying premiums from time to time during the previous year and had periodically taken advantage of Blue Cross's 30-day grace period to catch up on their monthly payments. Then, on June 20, Tee Nee Trailer's principal customer, a boat manufacturer named Bayliner, cancelled its pending order and requested Tee Nee Trailer to "stop all production and shipments of the welded trailer(s)" Tee Nee Trailer had been manufacturing for Bayliner. Realizing the further detrimental effect that the loss of this business would have on the company's finances, Richard Lotze met with key employees on June 20 and told them that the company was facing a "severe cash flow problem." As Lotze later described the exchange, "I immediately called a meeting to let the men know, the officers of the union know, that our insurance benefits were in jeopardy, and we could not guarantee payments beyond June." As a result of this meeting, Lotze said, "the men knew that there may be no monies left for premium payments [after the end of June]." Lotze added that although "[t]here was, obviously, concern that they would not have insurance," the men "continued to stay employed at Tee Nee Trailer Company" and to "accept wages." Lotze recalled specifically that August Vespasian was present at the June 20 meeting.
 
 
 5
 Sometime shortly thereafter, Sweeney and Lotze decided to "temporarily suspend" the payment of Blue Cross premiums until the company's financial situation improved. It was their hope, Lotze testified, that they could avoid termination of the policy by Blue Cross until "the cash flow would come in enough to pay back premiums to Blue Cross, but [it] did not." On September 27, 1989, Blue Cross sent a letter demanding full payment in ten days and then, on October 9, sent a notice of termination retroactive to July 1, 1989. As a result, Marilyn Sweeney wrote a letter to all Tee Nee Trailer employees on October 16, advising them that the Blue Cross policy had been cancelled.
 
 
 6
 In the meantime, August Vespasian had undergone surgery on July 3, as scheduled, and his claims for hospital expenses had been paid initially by Blue Cross. After termination of the policy in October, however, Blue Cross contacted the hospital and requested reimbursement on the ground that the Tee Nee Trailer policy had not been in effect when Vespasian's claims arose in July 1989.
 
 
 7
 After he returned to work at Tee Nee Trailer, Vespasian worked "reduced hours," due to the effects of his surgery. He was laid off permanently in May 1990, due to lack of work. Tee Nee Trailer had filed Chapter 11 bankruptcy in February 1990, in an attempt to reorganize, but the company's efforts were unavailing, and it finally ceased operation completely in September 1990.
 
 
 8
 As everyone connected with the lawsuit concedes, Tee Nee Trailer's bankrupt status put it beyond the legal reach of the Vespasians, who then turned for redress to Blue Cross, the two Tee Nee Trailer officials Sweeney and Lotze, and an entity they referred to in their amended complaint as the Tee Nee Trailer Insurance Program. The district court dismissed all claims against Blue Cross and the Insurance Program, for failure to state a cause of action, and granted summary judgment to Marilyn Sweeney and Richard Lotze. We agree with the result of the district court's rulings, although not completely with its reasoning.
 
 
 9
 2. The ERISA Claim for Breach of Fiduciary Duty
 
 
 10
 In their complaint and amended complaint, the plaintiffs contended that all four of the defendants qualified as fiduciaries under 29 U.S.C. Sec. 1002(21)(A) and should therefore be held liable for breach of their fiduciary duty to notify the plaintiffs that Tee Nee Trailer was delinquent in its premium payments. The district court held that because Tee Nee Trailer Company was the designated administrator of the insurance plan, the company alone was the plan's fiduciary. Moreover, the court said, because a corporation can qualify as a "person" under Sec. 1002(41)(A) but can only act through its officers and employees, the fact that Sweeney and Lotze were involved in the actual administration of the plan on Tee Nee Trailer's behalf did not automatically transform them into fiduciaries under Sec. 1002(41)(A). The court therefore granted summary judgment to Sweeney and Lotze on this claim.
 
 
 11
 The district court held further that Blue Cross could not be held liable for breach of fiduciary duty, because Sec. 1002(41)(A) limits the responsibility of a fiduciary "with respect to a plan to the extent ... he exercises any discretionary authority or discretionary control respecting management of such plan...." Under the facts alleged in the complaint, the district court said, Blue Cross clearly was not a fiduciary for the purpose of notification relating to termination. Indeed, the insurance policy, attached as an exhibit to the complaint, expressly provides that in the event the policy is cancelled, the employer is responsible for notification.[2] The district court cited Coleman v. Nationwide Life Ins. Co., 969 F.2d 54, 61 (4th Cir.1992), cert denied, 113 S.Ct. 1051 (1993), which also dealt with a "failure to notify" claim. There the court held that the insurer was not a fiduciary for purposes of notifying the beneficiaries of a delinquency, where the policy did not contain a provision assigning that responsibility to the insurer and the insurer had not assumed the responsibility de facto. On this basis, the district court dismissed the breach-of-fiduciary claim against Blue Cross.
 
 
 12
 Finally, the district court held that the Tee Nee Trailer Insurance Program could not qualify as its own fiduciary under Sec. 1002(41)(A), and that, in the absence of any facts alleged in the complaint that would otherwise qualify the Program as a fiduciary, it must be dismissed from the action.
 
 
 13
 We conclude that the district court's analysis under Sec. 1002(41)(A) was fundamentally correct. In addition, we note that the plaintiffs' standing to recover for breach of fiduciary duty is controlled by 29 U.S.C. Sec. 1109, which provides as follows:
 
 
 14
 Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations or duties imposed upon fiduciaries ... shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate. (Emphasis added.)
 
 
 15
 In interpreting the reach of Sec. 1109, the Supreme Court has indicated that the provision permits recovery by or on behalf of a plan--but does not permit recovery by an individual beneficiary--for a breach of fiduciary duty under ERISA. Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 140-42 (1985). Following the Supreme Court's lead, we have likewise held that Sec. 1109 permits recovery in the name of a plan only, and not by its individual participants or beneficiaries. See Tregoning v. American Community Mutual Ins. Co., 12 F.3d 79, 83 (6th Cir.1993), cert denied, 114 S.Ct. 1832 (1994); Richards v. General Motors Corp., 991 F.2d 1227, 1230-31 (6th Cir.1993).[3] For this reason, the defendants were entitled to dismissal for failure to state a claim under ERISA.
 
 
 16
 Nor can we interpret the plaintiffs' action in filing an amended complaint that merely joined the Tee Nee Trailer Insurance Program as a party defendant as sufficient to satisfy Tregoning and to avoid dismissal under Fed.R.Civ.P. 12(b)(6). As the district court noted, there are, simply, no facts alleged in the amended complaint that establish the Insurance Plan's status as a "person" under 29 U.S.C. Sec. 1002(41)(A) or that would render the Insurance Program liable to the plaintiffs on this or any other theory.
 
 3. The COBRA Claim for Continued Coverage
 
 17
 The plaintiffs also claimed that under 29 U.S.C. Sec. 1161(a), they were entitled to notice of their right to continued health insurance coverage under COBRA, either at the time August Vespasian returned to work in 1989 on a reduced-hours basis or in May 1990, when he was terminated. The problem with this theory is that the right to continued coverage under Sec. 1161(a) extends only to a "qualified beneficiary who would lose coverage under the plan as the result of a qualifying event." Under Sec. 1163(2), "termination" of employment and "reduction of hours" may constitute such a qualifying event. In this case, however, it was not Vespasian's "termination" or "reduction of hours" that caused loss of coverage--it was the company's failure to pay benefits, an event that caused retroactive termination of the insurance policy before Vespasian was laid off or experienced a reduction in hours. Hence, in this case, by the time either "qualifying event" actually occurred, there was no coverage to continue. Moreover, Sec. 1162(2)(c) specifically provides that the period of continued coverage, once it commences, does not extend past "[t]he date on which coverage ceases under the plan by reason of a failure to make timely payment of premium required under the plan...."
 
 
 18
 In short, the facts alleged in the complaint do not entitle the plaintiffs to relief under COBRA as against Blue Cross or Tee Nee Trailer, let alone against Sweeney or Lotze as Tee Nee Trailer's officers and employees.
 
 4. The Equitable Estoppel Claim
 
 19
 As the district court noted, this court has previously recognized a cause of action based on equitable estoppel as a part of developing "federal common law" under ERISA. The seminal case in the Sixth Circuit is Armistead v. Vernition, 944 F.2d 1287 (6th Cir.1991), and it was Armistead that the district court invoked in finding that the plaintiffs had not made out an equitable estoppel case against defendants Sweeney and Blue Cross. However, the court based its decision on a narrow interpretation of Armistead, ruling that Armistead prevents employers only from altering their interpretation of ambiguous contract provisions to the detriment of plan beneficiaries. While Armistead questioned whether the cancellation clause in the plaintiffs' first plan remained effective after subsequent amendments to the plan literature that omitted the clause, the Armistead court did not expressly limit equitable estoppel to claims based on a company's ambiguous contract provisions.[4]
 
 
 20
 We nevertheless find that in denying relief based on equitable estoppel, the district court reached the right result. Under Armistead, the elements of an estoppel claim in an ERISA action are as follows:
 
 
 21
 1) conduct or language amounting to a representation of material fact:
 
 
 22
 2) awareness of the true facts by the party to be estopped;
 
 
 23
 3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended;
 
 
 24
 4) unawareness of the true facts by the party asserting the estoppel; and
 
 
 25
 5) detrimental and justifiable reliance by the party asserting estoppel on the representation.
 
 
 26
 Armistead, 944 F.2d at 1298.
 
 
 27
 Without belaboring the other Armistead elements, we conclude that the estoppel claim in this case must fail for lack of proof of misrepresentation by the company and lack of proof of reliance upon the part of the plaintiffs.
 
 
 28
 They argue, first, that Blue Cross should be estopped from denying their claims because it "knowingly concealed" Tee Nee Trailer's failure to pay premiums "by first paying the bills for plaintiff's surgery, and then requesting and obtaining a return of the monies paid from the medical providers." The flaw in this argument is the fact that the Blue Cross group policy purchased by Tee Nee Trailer specifically allowed both retroactive cancellation for failure to pay premiums and recovery of amounts paid for services later discovered not to be covered.[5] Moreover, as noted above, the policy put the responsibility of notification of termination on the company.
 
 
 29
 Indeed, the plaintiffs received notice--or, at least, constructive notice--that August Vespasian's foot surgery might not be covered by the Blue Cross policy if it occurred on July 3, 1989, as scheduled. In an affidavit filed in district court, Vespasian asserts that he asked Sweeney in June if his surgery would be covered by the Blue Cross plan, but he did so, by his own admission, because he "was aware that Tee Nee Trailer Company was experiencing some financial difficulties." According to Vespasian, Sweeney told him "to go ahead with [the] surgery and specifically stated that [they] still had coverage." As previously noted, however, the company did have coverage at the time Sweeney made this statement in June. It was only when the payment for July (due on July 1, 1989) was not made that continued coverage was jeopardized. By that time, Vespasian had been told by Richard Lotze that insurance premium "payments beyond June were highly unlikely, and we could not guarantee payments beyond that period."
 
 
 30
 In short, the record before us shows that Vespasian could not maintain an action based on equitable estoppel against the company, let alone against its officers and employees, because the record fails to show misrepresentation on the part of the employer or reliance on the part of the employee.
 
 
 31
 In closing, we echo the words of the district court:
 
 
 32
 August Vespasian's employer [Tee Nee Trailer] is now bankrupt. Unfortunately, Vespasian is left without a remedy against an employer who failed to make insurance payments as promised, probably in breach of its fiduciary duties under ERISA. Vespasian joins countless employees who come before this Court, who have been denied health insurance coverage through no fault of their own. However, the bankruptcy of [Tee Nee Trailer] does not allow this Court to impose liability on other individuals who acted in the corporation's behalf, or the insurance company who acted according to its policy.
 
 
 33
 For all the reasons stated in this opinion, we AFFIRM the judgment of the district court dismissing all claims against Blue Cross and the Tee Nee Trailer Insurance Program and granting summary judgment to Marilyn Sweeney and Richard Lotze.
 
 
 
 [1]
 The original complaint listed Blue Cross and Marilyn Sweeney as defendants. The amended complaint added the Insurance Program and Richard Lotze as defendants. Lotze was specifically included in the ERISA and COBRA counts, but not in the third count based on equitable estoppel. The Tee Nee Trailer Insurance Program, however, is not specifically charged with liability in any of the three counts of the Amended Complaint
 
 
 [2]
 The policy provides that "[t]ermination of the Group Contract automatically ends all of your coverage and you are not offered a conversion privilege. It is the responsibility of your [employer] to tell you of such termination."
 
 
 [3]
 On appeal, the plaintiffs have brought to our attention the recent Eighth Circuit opinion in Howe v. Varity Corp., 36 F.3d 746 (8th Cir.1994), clarified by 41 F.3d 1263 (8th Cir.1994). In that case, the court read Massachusetts Mutual Life Ins. Co. v. Russell very narrowly to hold only that individual plan participants have no right of action for extra-contractual compensatory or punitive damages for breach of fiduciary duty, thereby confining Russell to its facts. The Howe court then determined that individual plan beneficiaries have a right of action under ERISA, 29 U.S.C. Sec. 1132(a)(3), for breach of fiduciary duty. The problem with Howe is that it ignores language in Russell that, even if considered dicta in the strictest sense, would appear to foreclose individual recovery under Sec. 1132(a)(3) for a fiduciary's breach of duty under Sec. 1109: "A fair contextual reading of the [latter] statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." Russell, 473 U.S. at 142. The individual participant or beneficiary, the court pointed out, is entitled to bring suit under Sec. 1132(a) against the plan administrator (here, the Tee Nee Trailer Company) to recover accrued benefits, to obtain a declaratory judgment of present and future benefits, to enjoin the plan administrator for improper activity, or to seek removal of the administrator, but the Court found no right of individual recovery under Sec. 1109. The problem in this case is, of course, that the "plan administrator" is judgment-proof
 More fundamentally, we cannot follow Howe without reversing our own precedent in Tregoning, which in this circuit can only be accomplished by the court sitting en banc. See Salmi v. Secretary of Health & Human Servs, 774 F.2d 685, 689 (6th Cir.1985).
 
 
 [4]
 See also O'Grady v. Firestone Tire and Rubber Co., 635 F.Supp. 81, 83-4 (S.D.Ohio 1986) ("a false representation of material facts, made with the expectation that such conduct would be acted upon by Plaintiffs, could serve as a basis for a cause of action under ERISA")
 
 
 [5]
 The Super Blue policy provided that "[i]f the Group [Tee Nee Trailer Company] does not make payment during the [30-day] grace period the Contract will be cancelled at the Plan's [Blue Cross's] option, on the last day of the grace period. The Group will be liable to the Plan for the payments due, including those for the grace period." The policy further provided that if Blue Cross "has erroneously paid for services and it is later discovered that [Blue Cross) ha[s] paid for services which are not considered Covered Services under this [policy], then [Blue Cross] has the right to recover and [the insured is] responsible to repay such amounts when requested to do so."